**UNITED STATES ex rel. Victor GON-ZALES, Petitioner-Appellant,**

v.

**Honorable Harold W. FOLLETTE, Warden of Greenhaven Prison, Stormville, N. Y., Respondent-Appellee.**

**No. 515, Docket 30738.**

United States Court of Appeals Second Circuit.

Argued June 5, 1968.

Decided June 24, 1968.

Parnell J. T. Callahan, New York City (Callahan & Wolkoff, Eugene A. Wolkoff, New York City, on the brief), for petitioner-appellant.

John G. Proudfit, Asst. Atty. Gen. (Louis J. Lefkowitz, Atty. Gen. of State of New York, Samuel A. Hirshowitz, First Asst. Atty. Gen., on the brief), for respondent-appellee.

Before WATERMAN and FEINBERG, Circuit Judges, and ZAMPANO, District Judge.[*]

FEINBERG, Circuit Judge:

Appellant Victor Gonzales, a second felony offender, is presently serving a sentence of seven and one-half to fifteen years in a state prison; he was convicted in 1965 in the New York State Supreme Court, Kings County, of possession of marijuana and of such possession with intent to sell.[1] Gonzales appeals from denial of a writ of habeas corpus in the United States District Court for the Southern District of New York, Marvin E. Frankel, J. After denying the writ, the district court granted appellant's application for a certificate of probable cause and for leave to proceed *in forma pauperis*. Thereafter, this court assigned counsel to Gonzales on appeal.

Appellant's arguments all deal with the allegedly erroneous admission into evidence in the state trial of two suitcases containing sixty-six packages of marijuana. These were found in the apartment in which Gonzales was arrested without a warrant. Appellant's major claim before us is that the arrest was not based upon probable cause; therefore, any search incident thereto was unconstitutional, requiring suppression of the marijuana. For this point, appellant's brief explicitly relies upon the summary of the facts made by Judge Frankel on the basis of the papers before him, including the transcript of the state trial and of the state hearing on a motion to suppress. The judge's findings were as follows:[2]

On January 7, 1964, at about 6:30 p.m., George Bermudez, a New York City detective in plain clothes, met with one Roger Lewis at a Pacific Street apartment in Brooklyn. After some bargaining, Lewis agreed to sell Bermudez two pounds of marijuana for $300. Bermudez exhibited this sum to Lewis, but refused to pay it over until delivery. Lewis then left the apartment. Waiting a minute or so, Bermudez ran out hastily through the front door, went around a corner, and entered an unmarked car, in which Detectives McClean, Drape and Lazarus were waiting by pre-arrangement.

Soon a gray Volkswagen came around the corner, driven by Lewis, who was accompanied by his wife and another man. The unmarked car trailed the Volkswagen for about two miles, to the junction of Union Street and Franklin Avenue, Brooklyn. There, Lewis alighted from the Volkswagen and walked across Franklin Street into a candy store. Detective McClean, also in plain clothes, stationed himself on a corner diagonally opposite from the Volkswagen.

When Lewis emerged from the candy store after a brief interval, he exchanged some shouted words with a man leaning out of a window in an apartment house at 1045 Union Street. Lewis then reentered the candy store, returning a soda bottle he had brought out before, came out again, and went back to the Volkswagen. He took a small traveling bag from the

---

[*] Of the District of Connecticut, sitting by designation.

1. The conviction was affirmed without opinion, People v. Gonzalez, 24 A.D.2d 841, 263 N.Y.S.2d 1008 (1965); leave to

appeal was denied by Judge Fuld on December 15, 1965.

2. United States ex rel. Gonzales v. Follette, No. 66 Civ. 1091 (S.D.N.Y. June 17, 1966).

car and walked to and into the building at 1045 Union Street.

Detective McClean entered the apartment house and saw Lewis and petitioner [Gonzales] talking. As he walked behind and past them, he could hear their voices, but could not make out what they were saying. He proceeded through the entrance and started up the stairs. When he had climbed a flight or so, he saw Lewis and petitioner start up the stairs from the main landing. He continued to mount the stairs, going to the fourth and top floor. As he made the climb, he heard footsteps close behind him which moved off the stairs at the third-floor landing. From his station on the top floor, he heard two male voices on the floor below. He heard petitioner say "$100," and, after Lewis replied, heard petitioner add "No, wait here, and I'll get it." Then he heard, though he did not see, the closing of a door below and its reopening a minute or so later. Then he saw Lewis go down the stairs and out the front door.

Descending the stairs and leaving the building to return to the police car, McClean saw Lewis, traveling bag in hand, reenter the Volkswagen and drive off. The police car followed and stopped Lewis a few blocks away. A search of the car disclosed two packages of marijuana, which Lewis acknowledged he had just obtained from his "connection." Lewis offered to co-operate, asking that his wife and their male passenger not be involved. McClean said, "All right," and Lewis led the officers back to the Union Street apartment house. McClean and Lewis went to an apartment on the third floor and knocked. The door was opened by petitioner, whom Lewis immediately identified as the source of the marijuana. Petitioner tried to push the door closed, then turned and fled down a hallway within the apartment. McClean pushed through the doorway, seized petitioner at the end of the hallway, and placed him under arrest. Underneath a table next to where petitioner was seized, McClean found a shopping bag filled with marijuana. Searching further, McClean found in a children's bedroom two suitcases containing marijuana. The suitcases and their contents were later introduced as prosecution exhibits at petitioner's trial.

Appellee points out that the legality of the arrest under state law was governed by section 177 of the New York Code of Criminal Procedure, which provides that a peace officer may arrest, without a warrant:

> When he has reasonable cause for believing that a felony has been committed, and that the person arrested has committed it * * *.

This is for our purposes substantially the same as the fourth amendment requirement of "probable cause." Wong Sun v. United States, 371 U.S. 471, 478 n. 6, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963). Citing that and two other Supreme Court decisions, Gonzales claims that the facts set forth above were not sufficient to establish "probable cause" because the arrest was based only upon the statement of "an unknown and interested informer." This is an unduly myopic view of what occurred. Detective McClean was the arresting officer. At the time he made the arrest, making due allowance for legitimate inferences, McClean had reason to believe at least the following: A fellow detective had contracted with a "pusher" (Lewis) to buy two pounds of marijuana for $300. Thereafter, Lewis immediately went to his source. McClean saw Lewis talking to his contact in 1045 Union Street, heard a discussion of price between them on the third floor, heard the contact leave the hallway after saying "I'll get it," and then return, and then saw Lewis leave the building thereafter. Lewis was arrested a few minutes later with two packages of marijuana which Lewis acknowledged he had just obtained from his "connection." At this point, when Lewis offered to cooperate and became an "informer," McClean's knowledge of facts which might justify

arrest of Gonzales was extensive. This was not the classic case of corroborating an informer's tip; it was, in fact, the reverse. The informer confirmed what McClean had already deduced from his own observation and other reliable information, e.g., that Lewis had gone to someone on the third floor of 1045 Union Street to buy narcotics and had actually made the purchase. When Lewis took McClean to the apartment and identified his connection as Gonzales, and when the latter attempted to flee,[3] surely "probable cause" for an arrest existed. We have been told to use our common sense in resolving the issue of probable cause, see United States v. Ventresca, 380 U.S. 102, 109, 85 S.Ct. 741, 13 L.Ed.2d 684 (1965) (warrant case). Using it, we agree with the district judge that it was "obviously reasonable" for McClean to make the arrest when he did. See Beck v. State of Ohio, 379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964).

Since the bulk of the information here did not come from an informant, the cases relied on by appellant are inapposite. Thus, in both Miller v. United States, 357 U.S. 301, 78 S.Ct. 1190, 2 L. Ed.2d 1332 (1958), and Wong Sun v. United States, 371 U.S. 471, 83 S.Ct. 407, 9 L.Ed.2d 441 (1963), the arresting officers had neither seen nor heard the defendant negotiating with the informer before the arrest. Moreover, the Court in *Miller* did not decide the issue of probable cause for arrest. And in Henry v. United States, 361 U.S. 98, 80 S.Ct. 168, 4 L.Ed.2d 134 (1959), the information known to the officers was far less than here. Much more analogous are such decisions as United States v. Elgisser, 334 F.2d 103, 111 (2d Cir.) (concurring opinions of Lumbard, C. J., and Friendly, J.), cert. denied, Gladstein v. United States, 379 U.S. 879, 85 S.Ct. 148, 13 L.Ed.2d 86; 379 U.S. 881, 85 S.Ct. 151, 13 L.Ed.2d 87 (1964), United States v. Rivera, 321 F. 2d 704 (2d Cir. 1963), and United States ex rel. Wilson v. LaVallee, 367 F.2d 351 (2d Cir. 1966), in which arrests without warrants were held proper. Cf. Gilbert v. United States, 366 F.2d 923, 931 (9th Cir. 1966), cert. denied, 388 U.S. 922, 87 S.Ct. 2123, 18 L.Ed.2d 1370 (1967).

■ Therefore, were this the only point in the case, we would affirm without question. However, appellant has also argued to us (1) that the search of the apartment in which he was present, allegedly only as a visitor, when arrested was so extensive as to be unreasonable; and (2) citing Miller v. United States, supra, that entry into the apartment was improper because it was done by force and without announcement of authority or purpose at a time when a warrant could have been obtained. The district judge apparently did not deal with either of these arguments and with good reason; the first was not made to him, and the latter, to the extent it was raised at all, was buried in a few short paragraphs scattered in the twenty-six page petition for a writ and accompanying memorandum. Moreover, on the record before us, we cannot be sure whether either of these claims has ever been pressed in the state courts to the extent that it should properly be considered as exhausted. Accordingly, as to these two issues, we remand for determination by the trial court; as to each, if state remedies have not been exhausted, a new order denying the writ should be entered; if state relief has been adequately sought, since the trial court has already found most of the relevant facts, these significant issues should be resolved on the merits.

Judgment affirmed as to the finding that probable cause existed for the arrest of appellant; the case is remanded for determination of other issues in accordance with this opinion. Counsel in this court will continue to represent Gonzales in the district court, unless relieved by that court.

3. Cf. United States v. Soyka, 394 F.2d 443 (2d Cir. 1968) (in banc).