UNITED STATES of America, Appellant,

v.

Angel ROSARIO, Appellee.

No. 82, Docket 76–1197.

United States Court of Appeals,
Second Circuit.

Argued Sept. 14, 1976.

Decided Oct. 14, 1976.

Josephine Y. King, Asst. U.S. Atty., Brooklyn, N.Y. (David G. Trager, U.S. Atty., E.D.N.Y., Paul B. Bergman, Asst.

U.S. Atty., Brooklyn, N.Y., of counsel), for appellant.

Richard I. Rosenkranz, Brooklyn, N.Y., for appellee.

Before SMITH, OAKES and MESKILL, Circuit Judges.

J. JOSEPH SMITH, Circuit Judge:

This is an appeal by the United States, pursuant to 18 U.S.C. § 3731, from an order of the United States District Court for the Eastern District of New York, John R. Bartels, Judge, in a criminal narcotics case granting motion to suppress evidence seized when defendant was searched following his arrest without a warrant. We find no error and affirm the suppression order.

### I.

On January 16, 1975 Horace Balmer, an undercover agent of the Federal Drug Enforcement Administration (DEA), purchased 50.7 grams of heroin from Jose Gonzalez in an apartment in Brooklyn. On March 5, 1975 Balmer purchased another 77.86 grams of heroin from Gonzalez at the same apartment. At both transactions another man was present and participated in the negotiation and sale of the heroin. At the first transaction a woman was also present and participated.

As was the DEA practice, both sales were reported by agent Balmer to other DEA officers and to New York police officers, including Officer LeMoine of the New York Drug Enforcement Task Force. LeMoine talked to Balmer and read both his reports. The first report described Gonzalez's confederate as "unknown male—possibly called Angel—m/w/28 yrs., 5′8″ tall, 155 lbs, light complexion, wearing blue trousers, multi colored shirt and sneakers." The second report referred to the first one and described Gonzalez's confederate as "John Doe 'Angel' . . . wearing white T-shirt and light brown slacks." Balmer's first report described Gonzalez's woman confederate as "unknown female—f/w/20 yrs. of age, wearing a white 'T' shirt, bright blue dungarees and white high heel shoes, 5′2″ tall, 110 lbs, light complexion, dark brown hair and very soft spoken."

LeMoine knew Gonzalez, and on April 29, 1975 he was looking for Gonzalez in order to arrest him. About 6:30 p. m. he saw Gonzalez sitting in the driver's seat of a van parked at Fourth Avenue and 53rd Street in Brooklyn. LeMoine and his partner ordered Gonzalez and three other persons, two males and a female, who were in the van to leave it and then arrested Gonzalez. The police report says the female was white, 5′5″ tall, weighed 135 lbs, and was wearing a light green jacket, flowered blouse, blue dungarees, and black shoes. One of the males was described in the police report as negro-hispanic, 5′11″ tall, 165 lbs, and wearing a brown shirt, brown jacket, brown trousers, and dark shoes. The other male was described in the police report as white, 32 years old, 5′7″ tall, weighing 155 lbs, and wearing a blue cotton shirt, blue dungaree jacket, blue trousers, and black shoes. LeMoine asked this latter male— whom he had never seen before—to identify himself. Upon hearing the response "Angel," LeMoine arrested him. LeMoine then "frisked" Gonzalez, Rosario, and the third male. He did not frisk the woman. In the pocket of Rosario's jacket he found six tinfoil packets containing a white powder which was subsequently identified as heroin.

All four persons were taken to police headquarters. Balmer then indicated that Angel Rosario was not the person who assisted Gonzalez in his drug sales. Rosario was charged with knowingly and intentionally possessing 26.82 grams of heroin in violation of 21 U.S.C. § 844(a). The other male and the female were "processed" and then released. Gonzalez was indicted and found guilty by a jury of two counts of possession with intent to distribute and two counts of distribution of heroin.

### II.

The issue before us is whether the court was correct in finding a lack of probable cause for the arrest of Rosario.

■ The test to be applied by the district judge[1] in assessing probable cause for arrest[2] is whether, based on the collective knowledge of the police, rather than that of the arresting officer alone, the facts available to the police at the time of the arrest were "sufficient to warrant a prudent man in believing that the petitioner had committed . . . an offense." *United States ex rel. LaBelle v. LaVallee*, 517 F.2d 750, 753 (2d Cir. 1975), *cert. denied*, 423 U.S. 1062, 96 S.Ct. 803, 46 L.Ed.2d 655 (1976), quoting *Beck v. Ohio*, 379 U.S. 89, 91, 85 S.Ct. 223, 13 L.Ed.2d 142 (1964). *United States v. Watson*, 423 U.S. 411, 417, 96 S.Ct. 820, 46 L.Ed.2d 598 (1976); *Gerstein v. Pugh*, 420 U.S. 103, 111, 95 S.Ct. 854, 43 L.Ed.2d 54 (1975); *Whiteley v. Warden, Wyoming State Penitentiary*, 401 U.S. 560, 91 S.Ct. 1031, 28 L.Ed.2d 306 (1971).[3] In assessing probable cause it would be irrelevant that the person arrested turned out not to be Gonzalez's confederate in the sales to agent Balmer if the police had had probable cause to arrest the confederate and had made an understandable mistake in arresting Rosario. *Hill v. California*, 401 U.S. 797, 803–805, 91 S.Ct. 1106, 28 L.Ed.2d 484 (1971).[4]

■ The police, however, did not have enough information to support their obtaining an arrest warrant for Angel Rosario prior to seeing Gonzalez on April 29. The government concedes that if agent Balmer had been present on April 29, he would not have arrested Rosario. We agree with Judge Bartels that the physical description of Gonzalez's confederate given by Balmer to LeMoine would fit a very large group of ordinary young men.

We agree also that Officer LeMoine did not obtain enough additional information just prior to the arrest to have probable cause to arrest Angel Rosario. Certainly Rosario's truthful response to the inquiry about his name is not corroborative information.[5] The government argues that Rosario's being in the company of Gonzalez and the female is enough corroboration to support a finding of probable cause.

However, the police description of Gonzalez's female confederate at the January 16 sale to Balmer does not resemble—in terms of height, weight, or clothing—the description of the woman with Gonzalez and Rosario on April 29. Rosario's talking with Gonzalez in a van parked on a Brooklyn street 55 days after Gonzalez's last sale to

1. The New York criterion for warrantless arrest conforms to the federal standard of probable cause. *United States ex rel. Gonzales v. Follette*, 397 F.2d 232, 234 (2d Cir. 1968).

2. The record clearly indicates that this is not a case where the search of Rosario can be justified on the grounds that there was any indication that Rosario may have been armed and posed a danger to Officer LeMoine and his partner. *Terry v. Ohio*, 392 U.S. 1, 24, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968). *Sibron v. New York*, 392 U.S. 40, 65, 88 S.Ct. 1889, 20 L.Ed.2d 917 (1968).

3. In *Whiteley* the arresting officers, relying on information they had heard on the police radio that an arrest warrant had been issued for Daley and Whiteley, stopped a car containing Daley and Whiteley. One officer knew Daley, and the other person fit the radio description of Whiteley. In response to an inquiry by police, he gave a false name. The police then arrested both men. The Supreme Court held that there was not probable cause for the arrest, since the magistrate did not have probable cause for issuing the arrest warrant and the arresting officers did not acquire enough additional infor-

mation to corroborate the information given to obtain the warrant. *Whiteley, supra*, 401 U.S. 567, 91 S.Ct. 1031.

4. In *Hill* the police had probable cause to arrest Hill for an armed robbery and went to his apartment, where they found Miller, who physically resembled the description the police had of Hill. The police saw an automatic pistol in plain view and considered Miller's explanation as to why he was in Hill's apartment to be evasive.

In this case LeMoine intended to arrest Gonzalez, and it was only a coincidence that he found Rosario with Gonzalez. Rosario was on a street, not in an apartment. There is no claim by the government that Rosario's answers to LeMoine were evasive. The police had only a general description of Gonzalez's confederate and did not know, prior to the arrest, either his address or full name. In Brooklyn today there are undoubtedly many individuals with the name of "Angel."

5. We note that in the 1976–77 Brooklyn telephone directory there are five persons named Angel Rosario.

Balmer may have some corroborative value. But Officer LeMoine was completely ignorant of the content of the conversation between Rosario and Gonzalez and saw nothing pass between them. The inference that persons who talk to known dealers in narcotics have engaged in criminal traffic in narcotics "is simply not the sort of reasonable inference required to support an intrusion by the police upon an individual's personal security." *Sibron v. New York*, 392 U.S. 40, 62, 88 S.Ct. 1889, 1902, 20 L.Ed.2d 917 (1968).

It is of course possible that while no single piece of information would support a finding of probable cause, consideration of all the information available to the police would support such a finding. *LaBelle v. LaVallee, supra*, at 754. Judge Bartels considered this to be a close case. We agree. Since Judge Bartels heard the testimony of Balmer and LeMoine at the January 1976 hearing on the suppression motion and is better able to weigh the live testimony,[6] we affirm his finding.

Affirmed.

MESKILL, Circuit Judge (dissenting):

I respectfully dissent. While I agree with the majority and with Judge Bartels that this case is a close one, I cannot agree that the arrest of Rosario was illegal. Analysis of mistaken identity cases under *Hill v. California*, 401 U.S. 797, 91 S.Ct. 1106, 28 L.Ed.2d 484 (1971), is a two-step process. The first step is to determine whether there was probable cause to arrest the right person, and the second step is to determine whether the arrest of the wrong person was a "reasonable," "understandable," or "good faith" mistake. *Id.* at 802–04, 91 S.Ct. 1106. I have no doubt that there was probable cause to arrest the Angel who had, on two occasions, helped Gonzalez sell heroin to Officer Balmer, and I do not understand the opinion of the majority to hold otherwise. The question to be re-

solved on this appeal is whether the mistake made by Officer LeMoine was reasonable. I believe that it was. Rosario, like the suspect, was named "Angel," he fit the suspect's general description and he was found in the company of the suspect's accomplice. Individually, these facts prove very little, but taken together, as they must be, *United States ex rel. LaBelle v. LaVallee*, 517 F.2d 750, 754 (2d Cir. 1975), *cert. denied*, 423 U.S. 1062, 96 S.Ct. 803, 46 L.Ed.2d 655 (1976), they reduce the possibility of error considerably. This was, after all, a street encounter, and the police had been looking for Gonzalez and his confederate for almost two months. Under the circumstances, I fail to see what reasonable alternative was open to Officer LeMoine. If he had let Rosario go, it might have turned out that Rosario was the right "Angel," so that was hardly a viable choice. He might have questioned Rosario at the scene prior to the arrest, but even if Rosario had told him that he was the wrong man, LeMoine would probably have been justified in disbelieving such a statement. *See Hill, supra*, 401 U.S. at 803, 91 S.Ct. 1106. The mistaken arrest of Rosario was both "understandable" and "reasonable."

The majority quite properly affords considerable deference to the opinion of Judge Bartels because he was in the best position to weigh the testimony of the police officers given at the suppression hearing. A careful reading of his Memorandum of Decision, however, convinces me that Judge Bartels' decision was influenced considerably by the fact that the "Angel" arrested was not in fact the same "Angel" described by Officer Balmer. Three times in the Memorandum Judge Bartels referred to Rosario as an "innocent" person. The last reference appears in the following passage:

> There is no question that this case is a close one; but the Court concludes that the arrest of an innocent person should be carefully scrutinized and that a more pre-

---

6. LeMoine testified at the suppression hearing (App. 56) that Rosario was wearing a "floral-type" shirt when arrested. The police report LeMoine filled out says Rosario was wearing a blue cotton shirt. LeMoine testified (App. 110) that Gonzalez's confederate was "hispanic," although Balmer's first report says he was "white."

cise and identifying description is required than here present.

If by this statement Judge Bartels means that in determining probable cause the arrest of an innocent person should be more carefully scrutinized than the arrest of a guilty person, he is in error. Just as an arrest is not to be validated by what it produces, neither should an otherwise reasonable arrest be invalidated by what subsequently comes to light.

I can only conclude that Rosario's "innocence" was a persuasive factor with Judge Bartels and that he would have found probable cause if Rosario was in fact the guilty "Angel." While it is understandable that the description of this arrestee might appear unsatisfactory for purposes of determining probable cause when viewed with the benefit of hindsight, it is irrelevant that he was not in fact Gonzalez's confederate, *see Hill, supra*, at 803–05, 91 S.Ct. 1106. Judge Bartels agreed that "LeMoine had probable cause to believe that a felony had been committed by someone named 'Angel,'" but he thought the description lacked particularity because "[t]he physical description as to weight, height, color and age would fit a very large group of ordinary young men." I submit that the group would shrink considerably if each member had to be named "Angel." The group would be further reduced in size where the "Angel" is found in the presence of the same heroin distributor, Gonzalez, whom the suspect "Angel" aided in heroin transactions with Officer Balmer. There was clearly probable cause to arrest the right "Angel," and a reasonable mistake of identity should not invalidate Rosario's arrest. We must not demand that police officers maintain the same standard for probable cause for an arrest that we require of the government for a criminal conviction. "[S]ufficient probability, not certainty, is the touchstone of reasonableness under the Fourth Amendment." *Hill, supra*, at 804, 91 S.Ct. at 1111.

I believe that there was probable cause to arrest Rosario. Because his arrest was legal, the search incident to the arrest was

valid and the evidence seized should not have been suppressed.

I would reverse the order of the district court.