**UNITED STATES of America,**

v.

**Jahad JABBAR, Defendant.**

**No. 85 Cr. 932 (DNE).**

United States District Court,
S.D. New York.

Dec. 11, 1986.

Rudolph W. Guiliani, U.S. Atty., S.D. N.Y., Margaret S. Groban, Asst. U.S. Atty., of counsel, for plaintiff.

Stevens, Hinds & White, P.C., New York City, Lennox S. Hinds, of counsel, for defendant.

## OPINION AND ORDER

EDELSTEIN, District Judge:

The defendant, Mr. Jahad Jabbar, is charged in an indictment with possessing with intent to distribute eighteen glassine envelopes containing cocaine and seven glassine envelopes containing heroin in violation of 21 U.S.C. Sections 812, 841(a)(1), 841(b)(1)(B) and 18 U.S.C. Section 2. Defendant has moved pursuant to Federal Rules of Criminal Procedure 12(b)(3) and 41(e) to suppress evidence seized in alleged violation of his Fourth Amendment rights. An evidentiary hearing was held on October 27, 1986. The motion is denied.

## BACKGROUND

On May 20, 1986, at approximately 4:00 P.M., New York City police officer Antoine Dandridge ("Officer Dandridge"), acting in an undercover capacity, went to the southwest corner of 123rd Street and Lexington Avenue in New York City seeking to make an undercover purchase of controlled substances. At that location, Officer Dandridge was approached by a black male later identified as Darryl Sealey ("Sealey") who offered to sell Dandridge the drug marijuana. Officer Dandridge rejected the offer and inquired of Sealey where he might purchase the crack form of cocaine. Gesturing to an individual standing nearby, Sealey responded that "[w]ell, my man has it over here."

Officer Dandrige, in Sealey's presence, purchased a vial of crack from the individual pointed out by Sealey and later identified as Michael Brown ("Brown"). After the purchase, Officer Dandridge returned to his private automobile and radioed his back-up field team. Officer Dandridge detailed the purchase which had just taken place and gave descriptions of Sealey and Brown so that arrest could be made. Officer Dandridge described Sealey as a black male wearing a blue shirt with white trim and blue jeans. Officer Dandridge further stated that the suspect would be near 123rd Street and Lexington Avenue in the company of another black male wearing a red and black plaid jacket.

New York City Police Detective Donald Kennedy ("Detective Kennedy"), an experienced member of the back-up field team, heard Officer Dandridge's description of the two participants in the buy and bust operation over his police car radio moments after the sale took place. Detective Kennedy immediately drove against traffic to arrive at Lexington Avenue between 122nd Street and 123rd Street. From Lexington Avenue, at approximately 4:07 P.M., Detective Kennedy saw a black male, about 5'7" tall, wearing a blue warm-up or sweatshirt style zippered jacket with white trim and blue jeans talking to another black male wearing a red and black plaid jacket in front of 2010 Lexington Avenue. These two men separated when they saw the police approach; the man wearing the blue jacket, later identified as Jahad Jabbar ("Jabbar"), walked briskly north on Lexington Avenue toward 123rd Street and the man wearing the plaid jacket, later identified as Brown, walked south toward 122nd Street. Detective Kennedy did not see any-

one else on that block matching the undercover officer's description of a black man wearing a blue shirt with white trim and blue jeans.

Detective Kennedy followed Jabbar and, within minutes of the sale to Officer Dandridge by Brown and Sealey, placed him under arrest for participating in a sale of crack, while another police officer arrested Brown who was wearing the red and black plaid jacket. During a search following the arrest, Detective Kennedy found twenty-five glassine envelopes containing white powder in Jabbar's jacket pocket.

After the arrest and search, Officer Dandridge drove by the scene of the arrest to identify the suspects. Officer Dandridge positively identified Brown but informed the back-up team Sergeant that Jabbar was not the other participant in the original drug transaction. Detective Kennedy did not learn that Jabbar was not one of the sale suspects until he returned to the precinct. Sealey was arrested inside a building on Lexington Avenue between 122nd Street and 123rd Street approximately ten minutes after the apprehension of Jabbar and Brown. Sealey, a black male about 5'8" tall, was wearing a blue shirt with a white stripe around the collar and dungarees when he was arrested.

## DISCUSSION

Jabbar moves to suppress the narcotics seized as a result of the search of his pockets by Officer Kennedy. Jabbar claims that because the description given by Officer Dandridge was not sufficiently specific, the police did not have probable cause to arrest Jabbar. Accordingly, Jabbar maintains that the police did not have probable cause to believe that a search of Jabbar's person would disclose evidence of a crime. Second, defendant asserts that his apprehension on the street was not a full-blown arrest but rather a brief investigatory "stop" pending verification by the undercover officer who had purchased the drugs. As a result, Jabbar maintains that the apprehending officer was entitled to conduct a pat-down frisk of the outside of

Jabbar's clothing but was not entitled to conduct a search of the inside of Jabbar's pockets. Based on these contentions, Jabbar claims that the contraband was taken from his person as a result of an illegal arrest and search and as such must be suppressed.

### A. Probable Cause

■ An arrest made without a warrant is unlawful unless it is made upon probable cause. *Dunaway v. New York*, 442 U.S. 200, 208 & n. 9, 99 S.Ct. 2248, 2254 & n. 9, 60 L.Ed.2d 824 (1979). Although the evidence necessary to support the existance of probable cause need not reach the level of evidence necessary to support a conviction, it must constitute more than rumor, suspicion, or a strong reason to suspect. *United States v. Fisher*, 702 F.2d 372, 375 (2d Cir.1983). The existence of probable cause to arrest a suspect must be determined with reference to the facts of each case. *Id.* In this Circuit probable cause exists if "the officers have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient in themselves to warrant a person of reasonable caution in the belief that (1) an offense has been or is being committed (2) by the person to be arrested." *Id.* Where a description of a suspect does not identify any specific individual, as opposed to being applicable to a number of potential suspects, probable cause to arrest does not exist. *Id.* at 375–76. For example, where an otherwise unimplicated laundry proprietor was mistakenly arrested instead of another laundry operator on that same street with the very same surname, probable cause to arrest did not exist since there were several launderies on that street. *Wong Sun v. United States*, 371 U.S. 471, 479, 83 S.Ct. 407, 412, 9 L.Ed.2d 441 (1963).

■ In the instant case, Officer Dandridge's description of Sealey as a black male wearing a blue shirt with white trim in the company of another black male wearing a red and black plaid jacket on Lexington Avenue near 123rd Street was sufficiently detailed so that it would not "fit a

very large group of ordinary young men." *United States v. Rosario*, 543 F.2d 6, 8 (2d Cir.1976). Though an otherwise adequate description can be rendered unsatisfactory by the mere passage of time or the presence of other individuals fitting the description, neither situation was present in the facts at hand.

Jabbar was arrested fewer than ten minutes after the sale by Sealey and Brown to Officer Dandridge. When Detective Kennedy first viewed Jabbar, he was, as Officer Dandridge's description had indicated, speaking to a black man wearing a red and black plaid jacket while standing on the west side of Lexington Avenue between 122nd Street and 123rd Street. Further, when Detective Kennedy approached Jabbar he did not see any other individual matching the description that Officer Dandridge had given for Sealey. Probable cause to arrest was further supported by the behavior of Jabbar upon the approach of Dectective Kennedy. Recognizing the car as an undercover police vehicle, Jabbar walked briskly from 2010 Lexington Avenue and, according to the testimony of Detective Kennedy, away from the approaching police car containing Kennedy and the other members of the back-up team.

Defendant argues that Officer Dandridge's description was insufficient in that it did not include the height, weight, approximate age, other articles of clothing, jewelry or any other distinguishing characteristics of the suspect. The focus of this court's inquiry is not whether the description was exhaustive, but rather, whether that description was sufficiently detailed to provide Detective Kennedy with probable cause to believe that Jabbar was the suspect. *See United States v. Valez*, 796 F.2d 24, 26–27 (2d Cir.1986). In this regard, Jabbar implies that it was unreasonable for Detective Kennedy to arrest Jabbar based on the description because at the time of the arrest Jabbar was wearing a large gold piece of jewelry around his neck.

Based upon clear precedent in this Circuit, such a contention is unpersuasive. In the case of *United States v. Valez, supra*, an individual with a small goatee and a thick mustache was mistakenly arrested instead of the cleanshaven suspect. The defendant contended that it was unreasonable for the description to omit that the suspect was cleanshaven and for the arresting officer to arrest a man with facial hair in reliance upon a description which had omitted to mention the existance of such. Refusing to supress the evidence seized incident to that arrest, the Second Circuit reasoned that:

> Given [the describing officer's] detailed description of the seller's clothing, his failure to mention that the seller was cleanshaven does not constitute an unreasonable oversight. Nor do we believe that [the arresting officer] should have inferred from [the describing officer's] silence on this matter that the seller was in fact cleanshaven. For instance, [the arresting officer] had no way of knowing whether [the describing officer's] silence was purposeful or whether it meant that [the describing officer] did not get a good look at the seller's face. Moreover, as the district judge noted, the police may justifiably place little reliance on the presence or absence of facial hair on a suspect who otherwise matches a description because facial hair may be worn or taken off as a disguise. *Id.* at 26–27.

Neither Officer Dandridge nor Detective Kennedy recalled seeing such a piece of jewelry either at the time of the sale or the apprehension. Likewise, even if either officer had seen the jewelry, given Officer Dandridge's description of the subject's clothing and positioning next to the co-suspect Brown, any failure to mention the jewelry would not constitute an unreasonable insufficiency of the description. Further, because of the ease of removing and adding a piece of jewelry or opening or closing one's jacket to cover a necklace, the description's silence as to jewelry does not mean that Detective Kennedy should have hesitated to arrest Jabbar because of the existance of the jewelry.

As a result of the report of the purchase of drugs by Officer Dandridge and his suf-

ficiently detailed description of the seller and the steerer, this court concludes that probable cause existed under the Fourth Amendment to arrest Brown and Sealey for participation in a sale of crack to an undercover police officer.

Jabbar was arrested under the mistaken belief that he was Sealey. In cases of mistaken arrest, the arrest is valid under the Fourth Amendment "if the police have probable cause to arrest the person sought and the arresting officer reasonably believed that the arrestee was that person." *United States v. Valez, supra,* 796 F.2d at 26; *see Hill v. California,* 401 U.S. 797, 802, 91 S.Ct. 1106, 1110, 28 L.Ed.2d 484 (1971). Probable cause existed to arrest Sealey. This court also finds that Detective Kennedy reasonably believed, based on the totality of the objective circumstances surrounding him at the time of the arrest—Jabbar's blue top with white stripes, his location on Lexington Avenue between 122nd Street and 123rd Street within minutes of the narcotics sale, his proximity to Brown who was wearing a red and black plaid lumberjacket, his evasive conduct when the police arrived, and the absence of anyone else matching this description—that Jabbar was the subject described by Officer Dandridge. Accordingly, Detective Kennedy's arrest of Jabbar was valid under the Fourth Amendment.

### B. Search Incident to an Arrest

Once a suspect is arrested, police may undertake an evidentiary search of the arrestee's person. *United States v. Robinson,* 414 U.S. 218, 234–236, 94 S.Ct. 467, 476–477, 38 L.Ed.2d 427 (1973); *United States v. Levy,* 731 F.2d 997, 1000 (2d Cir. 1984). Detective Kennedy stated in his testimony at the evidentiary hearing that, based upon Officer Dandridge's description of the suspects, Detective Kennedy arrested Jabbar immediately upon apprehending him. Jabbar, on the other hand, claims that his formal arrest did not occur until after Detective Kennedy had searched his pockets and found narcotics.[1] Based upon all the evidence adduced at the hearing, this court concludes that Jabbar was under arrest at the time of the search.[2]

■ As discussed above, Jabbar's similarity to the description given of Sealey and Jabbar's behavior upon Detective Kennedy's approach supply probable cause for his arrest. In view of the testimony of Detective Kennedy, as well as Jabbar's failure to assert at any point in these proceedings that he felt free to leave the scene of his confrontation with the police, this court finds that Jabbar was under arrest before Officer Kennedy conducted the search.

■ As the Supreme Court has held, even if the search had preceeded the formal arrest of Jabbar, this court would be obligated to rule the evidence admissible. *Rawlings v. Kentucky,* 448 U.S. 98, 111, 100 S.Ct. 2556, 2564, 65 L.Ed.2d 633 (1980). Regardless of the fact that "a formal arrest is not made until after an initial

---

**1.** Jabbar asserts that after the arrest and handcuffing of Brown, Detective Kennedy approached Jabbar and inquired "[w]hat do you have?" After Jabbar replied "I don't have anything," Detective Kennedy searched the defendant's pockets and produced the seized narcotics. Jabbar claims that at this point Kennedy handcuffed him and stated that the defendant was under arrest "for making a sale of crack."

It should be noted that under Jabbar's rendition of the arrest, Detective Kennedy stated that the arrest was for the sale of crack. Clearly, the arrest was predicated on Officer Dandridge's discription of the controlled buy. Detective Kennedy's search of Jabbar produced the powder form of cocaine in envelopes rather than the crack form of cocaine in vials. Furthermore, Detective Kennedy's discovery of the narcotics alone could not lead him to believe that Jabbar had made a sale of crack. Thus, the search of Jabbar did not supply the basis for his arrest.

**2.** The accuracy of Jabbar's account of the events surrounding his arrest is questionable. For example, in a sworn affidavit dated August 25, 1986, Jabbar stated that the two arresting police officers entered a building in pursuit of Brown. The affidavit continues to state that Jabbar was arrested only after the officers left the building. At the evidentiary hearing held by this court, Jabbar contradicted his affidavit by stating that only one officer entered the building. When Jabbar was alerted to this discrepancy, he stated that he did not remember reading or signing the affidavit.

search, the search can be justified as incident to an arrest that 'follow[s] quickly on the heels of the challenged search,' so long as probable cause to arrest existed before the search began." *United States v. Thornton*, 733 F.2d 121, 128 n. 9 (D.C.Cir. 1984) (quoting *Rawlings v. Kentucky*, 448 U.S. 98, 111, 100 S.Ct. 2556, 2564, 65 L.Ed.2d 633 (1980)); *see also United States v. Gorman*, 355 F.2d 151, 159–60 (2d Cir. 1965) (dictum), *cert. denied*, 384 U.S. 1024, 86 S.Ct. 1962, 16 L.Ed.2d 1027 (1966). In the situation at hand, it is clear that probable cause existed prior to a search which was made contemporaneous to the arrest if not following the arrest. Accordingly, even under defendant's portrayal of the events, the narcotics would be admissible as evidence seized in a search incident to an arrest.

## CONCLUSION

Defendant's motion is denied.

SO ORDERED