**UNITED STATES of America**

v.

**Ricardo VISCIOSO, Nelson Viscioso, Harry Mercado, Emenegirvo Cosme, and Rafael Medina, Defendants.**

**No. 88 Cr. 773 (SWK).**

United States District Court, S.D. New York.

April 13, 1989.

---

Rudolph W. Giuliani, U.S. Atty., S.D.N.Y. by Henry J. DePippo, Andrea M. Likwornik, Asst. U.S. Attys., New York City, for the Government.

Aranda and Guttlein by Margaret Alverson, New York City, for defendant Nelson Viscioso.

Gregory Cooper, New York City, for defendant Emenegirvo Cosme.

Sam A. Schmidt, New York City, for defendant Rafael Medina.

## MEMORANDUM OPINION AND ORDER

KRAM, District Judge.

The four count indictment in this criminal narcotics action charges each of the five defendants with conspiracy to distribute crack. The indictment also charges Ricardo Viscioso, Emenegirvo Cosme ("Cosme") and Rafael Medina ("Medina") with one count of distributing crack, charges Ricardo Viscioso, Harry Mercado ("Mercado") and Cosme in a separate count of crack distribution and in the fourth count charges Cosme with possession with intent to distribute.

Defendants Medina, Cosme and Nelson Viscioso have each moved separately for various forms of pre-trial relief. Medina has moved pursuant to Fed.R.Crim.P. 12(b)(3) for (1) the suppression of physical evidence siezed from him at the time of his arrest, (2) suppression of all identification testimony the government intends to offer at trial, (3) for an order precluding the government from referring to, introducing into evidence and/or cross-examining the defendant concerning prior immoral acts and/or criminal convictions, and (4) for joinder in the motions of co-defendants.

Cosme has moved, also pursuant to Rule 12(b)(3) for (1) suppression of all physical evidence obtained from defendant at the time of his arrest, (2) suppression of identification testimony at trial and (3) joinder in co-defendants' motions.

Finally, Nelson Viscioso has moved for (1) a severance of his trial from the other co-defendants, pursuant to Rule 14, (2) suppression of physical evidence siezed at or around the time of his arrest, (3) a bill of particulars, (4) additional discovery, (5) an order requiring the government to comply with the requirements of 18 U.S.C. § 3500 in a timely fashion and (6) joinder in co-defendant's motions.

## BACKGROUND

The defendants were arrested on October 6, 1988, following an undercover investigation by the New York City Police Department. The Complaint, sworn to by Police Officer Louis T. Hindenlang, alleges that on or about September 30, 1988, in front of the premises located at 243 West 42nd Street in New York City, an undercover police officer ("U/C I") approached Ricardo Viscioso and asked the price for ten "packs" of crack cocaine. The undercover and Ricardo Viscioso allegedly negotiated a price of $325 after which Ricardo Viscioso spoke with Medina, who stated that the packs contained fourteen vials of cocaine each. The Complaint states that a pack usually contains ten vials of cocaine. Ricardo Viscioso then told Medina to give U/C I only seven packs. Medina then told Cosme to give U/C I seven packs; he allegedly did and the undercover gave Ricardo Viscioso the $325 in exchange. Ricardo Viscioso and U/C I agreed to conduct a future transaction for a larger quantity. Laboratory tests established that these vials contained approximately 73 grains of crack cocaine.

On or about October 6, 1988, in front of the same premises, another undercover officer ("U/C II") allegedly heard Mercado whisper "crack". The undercover indicated he was interested in making a purchase at a specified price. Mercado asked the undercover to wait, but the undercover refused. Mercado then allegedly approached Ricardo Viscioso and Cosme and informed

them that U/C II wanted to purchase twenty vials of crack for $70. Ricardo Viscioso then allegedly quoted a price of $80. Cosme allegedly removed two plastic envelopes from his waist band, passed them to Mercado, and Mercado handed them to U/C II. The undercover paid for the envelopes, each of which allegedly contained ten vials of crack. A field test of the vials indicated that they contained crack.

On the same day and in the same location, a third undercover officer ("U/C III"), along with U/C I, met Ricardo Viscioso as had been agreed at their last encounter on September 30, 1988. Nelson Viscioso was also present. U/C III said he wanted to purchase 1000 vials of crack, but Ricardo Viscioso allegedly responded that he could sell him only 500 vials. Nelson Viscioso asked Ricardo Viscioso whether U/C I was the same person that had previously bought the crack the week before, and Ricardo Viscioso indicated that he was the same person. U/C III stated that he did not want to conduct the deal outside, so Nelson Viscioso told Ricardo Viscioso to allow one of the undercovers to enter their place of business to complete the sale. The two Visciosos began walking with the two undercovers toward the Carter Hotel, located at 250 West 43rd Street. At some point, Nelson Viscioso indicated that he did not feel comfortable going through with the deal and left the company of the other three men. Ricardo Viscioso subsequently refused to complete the transaction.

Cosme states in an affidavit that he was walking on 42nd Street, between 7th and 8th Avenues, on October 6, 1988, when several individuals stopped him at about 10:30 AM. These individuals, whom he later learned were police officers, stopped him and about ten other people. He states that the police officers did not indicate that they had a warrant, but simply asked him "what he had". He made no response and the police then allegedly went into his pockets and removed what is claimed to be cocaine. Cosme was held for about thirty minutes. According to Cosme's attorney, the alleged sale of cocaine by Cosme on October 6, 1988 took place at 8:10 AM.

Medina states in affidavit that he was walking down 42nd Street, between 7th and 8th Avenues, on October 6, 1988, when someone told him he was under arrest. The police immediately searched him and seized $28. He denies possessing drugs with intent to sell or selling drugs on September 30, 1988, at the location specified in the complaint.

Nelson Viscioso states in an affidavit, translated from Spanish by his attorneys' interpreter, that he was arrested on October 6, 1988 in the Carter Hotel, while he was on his way to his girlfriend's room in the Hotel. He admits that he had seen his brother prior to being arrested on Eighth Avenue near 42nd Street. He states that he thinks his brother was with two other people with whom he, Nelson, was not familiar. Nelson then walked to the corner with his brother as the two others walked behind them. He then parted company with his brother and went to a store on 42nd Street to look for a microwave oven. He also denies that he was involved in the sale of crack on October 6, 1988.

Roger Parrino, a sergeant with the New York City Police Department, a seven-year veteran who participated in the present investigation, also submitted an affidavit describing the events in question. He confirms, based on a conversation with an undercover officer, that this undercover purchased cocaine from Cosme, Medina and Ricardo Viscioso on September 30. The transaction took about five to seven minutes. The defendants were only a few feet away from the undercover during the transaction. Following the transaction, the undercover radioed a description of the three defendants to the field team. Approximately one hour later, the undercover went to an observation post and identified the three men to other officers who were surveilling the defendants.

This same undercover, on October 6, 1988, negotiated with the two Visciosos concerning the purchase of crack. Nelson Viscioso was in the company of Sergeant Parrino at this time for approximately five minutes. The undercover radioed a description of the two Visciosos to the field

team immediately after the meeting. Later that morning, the undercover drove by Cosme, Medina and Ricardo Viscioso, who were in police custody, and identified them as the persons from whom he had purchased crack on September 30. He also identified Ricardo Viscioso as one of the persons he had met with earlier that day.

A second undercover spoke with Parrino and explained that on October 6, he purchased crack from Mercado, Ricardo Viscioso and Cosme. Cosme was in the company of this second undercover for approximately three to four minutes during the transaction. This undercover also contacted the field team by radio with a description of the three men. Approximately two and one-half hours after the meeting with the three defendants, the second undercover, riding in a separate car from the first undercover, identified Cosme, Mercado and Ricardo Viscioso. Later on October 6, the first undercover identified Nelson Viscioso. The identification was made in a corridor at the Courthouse in such a manner that the undercover could view Nelson Viscioso without being seen.

## DISCUSSION

### Suppression of Physical Evidence

The moving defendants argue generally that the evidence siezed from them at the time of the arrest, made without a search or arrest warrant, should be suppressed on the basis that the arresting officers lacked probable cause to make the arrest. Each defendant stresses that at the time the police stopped them, they were not engaged in any illegal activity nor alleged to be. Instead, they characterize the arrest as a "sweep" of the area that involved the stopping of the defendants without probable cause or reasonable suspicion. The government contends that probable cause existed for each of the arrests. Both sides agree that if the arrests were lawful, the subsequent search was lawful. *See New York v. Belton*, 453 U.S. 454, 457, 101 S.Ct. 2860, 2861, 69 L.Ed.2d 768 (1981).

The Second Circuit has noted that, while each case must be considered on its own facts, "in general probable cause to arrest exists when the officers have knowledge or reasonably trustworthy information of facts and circumstances that are sufficient in themselves to warrant a person of reasonable caution in the belief that (1) an offense has been or is being committed (2) by the person to be arrested." *United States v. Fisher*, 702 F.2d 372, 375 (2d Cir.1983) (citations omitted); *see also United States v. Cruz*, 834 F.2d 47, 50 (2d Cir.1987) ("... warrantless arrest is justified if the police have probable cause when the defendant is put under arrest to believe that an offense has been or is being committed."), *cert. denied*, —— U.S. ——, 108 S.Ct. 1056, 98 L.Ed.2d 1018 (1988). Probable cause is a "practical, non-technical concept." *United States v. Ginsberg*, 758 F.2d 823, 828 (2d Cir.1985) (quoting *Illinois v. Gates*, 462 U.S. 213, 231, 103 S.Ct. 2317, 2328, 76 L.Ed.2d 527 (1983)). Probable cause for arrest "exists where the facts and circumstances within [the officers'] knowledge and of which they had reasonably trustworthy information [are] sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been or is being committed." *Id.* (quoting *Brinegar v. United States*, 338 U.S. 160, 175–76, 69 S.Ct. 1302, 1311, 93 L.Ed. 1879 (1949)). The Court will look to the totality of the circumstances, not any single fact, in determining whether probable cause existed to support an arrest. *Cruz, supra*, 834 F.2d at 51 (citing *Illinois v. Gates, supra*, 462 U.S. at 238, 103 S.Ct. at 2332). In addition, probable cause determinations in this case "can be based on the collective knowledge of the officers involved in the surveillance efforts because the various law enforcement officers in this investigation were in communication with each other." *Id.*

The record clearly indicates that the arresting officers had probable cause to believe that crimes had been committed, and thus to make the arrests in question, based on the reasonably trustworthy infor-

mation available to them.[1] Undercover police officers transacted the alleged drug deals with the arrestees, or overheard drug-related conversations made in their presence. The actions of the defendants, as described in the complaint, indicate that the police had a reasonable basis for concluding that the defendants were engaged in illegal activity. Cosme allegedly sold crack to two different undercover officers, on two separate occasions within a one-week period. Cosme was the individual who allegedly possessed the cocaine and actually handed it over to the undercover officers, in response to approval from other co-defendants. Medina was allegedly present at the September 30 transaction and the complaint indicates he had specific knowledge about the contents of the "packs" and helped negotiate the price with the undercover, through Ricardo Viscioso. Finally, Nelson Viscioso allegedly discussed the sale of drugs with his brother on October 6, though he apparently decided not to complete the sale and left his brother with the two undercovers. His alleged conversation, however, indicates that he had knowledge of the September 30 drug transaction with the first undercover and was prepared at least initially to transact a large drug deal on October 6.

█ Defendants' suggest that the arrests were unlawful because probable cause did not exist at the exact moment of arrest. The Court disagrees. Probable cause to arrest must exist at the moment of arrest, but may be based on earlier behavior of the person arrested. A delay of a few hours or days between the alleged commission of a crime and the arrest does not in and of itself diminish probable cause, but the delay may so weaken the reliability of certain information that probable cause may no longer exist. Thus, while the timing of the arrest is not the central issue, the reliability and specificity of the infor-

mation upon which the arrest is made remains the principal concern. The Court will consider each of the defendants' arguments in turn.

*Nelson Viscioso*

█ Nelson Viscioso states in his affidavit that he was not doing anything illegal at the time of his arrest. He admits meeting with his brother and walking to the corner with him. Two other people, not known to Nelson Viscioso, had accompanied Ricardo Viscioso. Nelson Viscioso than states, in a conclusory fashion, that he was not involved in dealing crack on October 6, 1988. A defendant does not have a right to a suppression hearing under all circumstances; instead, the defendant must show "that disputed issues of material fact exist before an evidentiary hearing is required." *United States v. Castellano*, 610 F.Supp. 1359, 1439 (S.D.N.Y.1985). As referenced by the *Castellano* opinion, the Court is "not required as a matter of law to hold an evidentiary hearing if [defendant's] papers did not state sufficient facts which, if proven, would have required the granting of the relief requested ..." *U.S. v. Culotta*, 413 F.2d 1343, 1345 (2d Cir.1969), *cert. denied*, 396 U.S. 1019, 90 S.Ct. 586, 24 L.Ed.2d 510 (1970), *cited in Castellano, supra*, 610 F.Supp. at 1439. The required showing must be made by an affidavit of someone with personal knowledge of the underlying facts. *United States v. Caruso*, 684 F.Supp. 84, 87 (S.D.N.Y.1988). A hearing is not required if the defendant's statements are general, conclusory or based on conjecture. *Castellano, supra*, 610 F.Supp. at 1439. The statements made by Nelson Viscioso in his affidavit do not present disputed factual issues for which a hearing is required. Of course, his claim to innocence is conclusory and could not be resolved at a pre-trial hearing. More importantly, his version of the events is not inconsistent with that stated in the com-

---

**1.** The Court assumes for the moment that the police had properly identified the arrestees. It is true that the police must have reasonably trustworthy information that the person being arrested committed the crime in question. *See Fisher, supra*, 702 F.2d at 375 (citations omitted). Defendants did not discuss the identifica-

tion issues in the context of their challenge to probable cause, but the Court finds the inquiry relevant. The Court will thus consider in the next section defendants' challenges to the procedures used to identify Medina and Cosme. Nelson Viscioso has not challenged his identification.

plaint and in the Parrino affidavit. The complaint and the Parrino affidavit indicate facts sufficient for an officer to believe reasonably under the circumstances that Nelson Viscioso conspired to sell narcotics. The arrest and the ensuing search were thus legal, and suppression is not warranted.

### Cosme and Medina

■ Cosme states in his affidavit that at the time of his arrest he was merely walking down the street, not talking to anyone, and that the police detained approximately ten other people at the time he was stopped. In his memorandum of law, Cosme's attorney argues that the police were involved in a sweep of the area, stopping a number of people for questioning. He also argues that the police's conduct does not indicate that they were arresting Cosme for the alleged drug transaction that took place two hours earlier on a very busy street. The information in Cosme's affidavit also does not indicate the presence of disputed facts for which a hearing is required. The government does not contest that Cosme was not committing a crime at the time he was arrested, but instead that probable cause existed to arrest Cosme for his earlier involvement in criminal narcotics transactions. Although Cosme denies selling drugs, this statement alone is insufficient to require a hearing.

Similarly, Medina states in his affidavit that he was lawfully on the sidewalk at the time he was arrested and denies selling drugs. Medina's attorney argues that Medina

> was involved in no activity to justify his arrest on a public sidewalk. He was lawfully and quietly on a public sidewalk when he was summarily arrested and searched. Certainly, defendant's mere presence at or near the scene of a crime,

or his proximity to another person who is arrested, is not justification for his arrest nor does it rise to the level of probable cause to arrest and search.

Medina's Memorandum of Law at 2–3. Medina's statements and claims also do not indicate that a hearing is warranted, for the reasons stated above.

■ Although the Court has no question that the police had probable cause to believe that crimes had been committed, the Court will consider below whether the police had probable cause to believe that the persons arrested were the ones who allegedly committed the crimes.[2] Defendants Cosme and Medina may argue, though they have not done so explicitly, that the arrests were made without probable cause because the police could not properly identify the arrestees as the persons involved in the alleged narcotics transactions. Nelson Viscioso has not challenged his identification. Probable cause must exist that a particular person committed the crime in question. *See Fisher, supra,* 702 F.2d at 375. If the sum of the identifying information available to the arresting officer "could have applied to any of a number of persons and did not reasonably single out from that group the person arrested, the arrest was not made with probable cause." *Id.; see United States v. Rosario,* 543 F.2d 6 (2d Cir.1976) (undercover's description of co-conspirator as casually dressed, 28 year-old, white male, who was five-foot, seven-inches tall weighing 155 pounds and responded to the name "Angel" did not create probable cause to arrest seven weeks later defendant's companion, named Angel Rosario, who was 32 years old, white male, five-foot, seven-inches tall weighing 155 pounds).

### Suppression of Identification Testimony

Defendants Cosme and Medina contend that the identification procedures used

---

**2.** This analysis is consistent with that used in "mistaken arrest" situations. When the person arrested is not in fact the person sought, "the arrest is valid under the fourth amendment if the police have probable cause to arrest the person sought, and the arresting officer reasonably believed that the arrestee was that person." *United States v. Valez,* 796 F.2d 24, 26 (2d Cir. 1986) (citing *Hill v. California,* 401 U.S. 797, 802, 91 S.Ct. 1106, 1110, 28 L.Ed.2d 484 (1971)), *cert. denied,* 479 U.S. 1067, 107 S.Ct. 957, 93 L.Ed.2d 1005 (1987). The Court has concluded that the police had probable cause to make the arrests of the persons sought, and the only remaining question is whether the police could reasonably believe that Cosme and Medina were the persons sought.

were unduly suggestive and improper, and thus seek suppression of any identification testimony stemming from the procedures used. The Court will also consider, as discussed above, whether the identification procedures were sufficiently specific such that the police could reasonably believe that the persons arrested were the same as those who allegedly committed the crimes.[3]

Medina notes that the "show-up" identification took place six days after the alleged transaction with the undercover who identified him. Medina argues, simply, that the Supreme Court frowns on this type of identification procedure, citing *Stovall v. Denno*, 388 U.S. 293, 302, 87 S.Ct. 1967, 1972, 18 L.Ed.2d 1199 (1967). Cosme notes that the "show-up" identification took place over two hours after the transaction with the identifying undercover allegedly occurred, and that the undercover had no direct contact with him. Both Cosme and Medina were in police custody at the time of the identifications. Defendants arguments boil down to three. First, show-up identifications are inherently suspect and should be suppressed. Second, the identifying undercover officers had insufficient contact with the accused, making the identification unduly suggestive. Third, the time delay makes the identifications unreliable.

In determining the admissibility of a particular identification the Court must consider as a matter of due process whether (1) the procedure used was impermissibly suggestive and, if so, (2) whether the identification remains reliable based on the totality of the circumstances. *See Solomon v. Smith*, 645 F.2d 1179, 1185 (2d Cir.1981); *see also United States v. Archibald*, 734 F.2d 938, 941 (2d Cir.), *modified on different grounds*, 756 F.2d 223 (2d Cir.1984). The Supreme Court has noted that "reliability is the linchpin in determining the admissibility of identification testimony ..." *Manson v. Brathwaite*, 432 U.S. 98, 114, 97 S.Ct. 2243, 2253, 53 L.Ed.2d 140 (1977) (rejecting *per se* exclusion of impermissibly suggestive identifications). Suppression is warranted only if the procudures used give rise to a "very substantial likelihood of irreparable misidentification." *Id.* at 116, 97 S.Ct. at 2253; *see United States v. Leonardi*, 623 F.2d 746, 755 (2d Cir.), *cert. denied*, 477 U.S. 928, 100 S.Ct. 3027, 65 L.Ed.2d 1123 and 449 U.S. 884, 101 S.Ct. 236, 66 L.Ed.2d 109 (1980). The Court should analyze the reliability of the identification by considering the factors outlined in *Neil v. Biggers*, 409 U.S. 188, 199–200, 93 S.Ct. 375, 382, 383, 34 L.Ed.2d 401 (1972). *See Manson v. Brathwaite, supra*, 432 U.S. at 114, 97 S.Ct. at 2253; *Solomon, supra*, 645 F.2d at 1185–86.[4] These factors are

(1) the witness's opportunity to observe the criminal at the time of the crime, (2) the degree of the witness's attention at the time, (3) the accuracy of the witness's initial description of the criminal, (4) the certainty with which the witness first identified the suspect, and (5) the time lapse between the crime and the identification.

*Solomon, supra*, 645 F.2d at 1186.

The Supreme Court has noted that the "practice of showing suspects singly to persons for the purpose of identification, and not as part of a lineup, has been widely

---

3. Though the inquiry is couched in slightly different terms, the analysis is similar. In *Valez, supra*, a mistaken arrest case, the Court noted that the reasonableness inquiry turned on the circumstances surrounding the encounter. 796 F.2d at 27. Similarly, whether or not the techniques used to identify the suspects violated due process turns on the totality of the circumstances. *See* discussion, *infra*.

4. A review of the cases in this area suggest that the Court should consider the *Biggers* factors whenever the identification techniques employed appear suggestive, even absent a determination that the techniques were "unduly" suggestive. *See, e.g., United States v. Ofarril*, 779 F.2d 791, 792 (2d Cir.1985) (Court considered reliability factors even though the stationhouse identification was not *per se* suggestive), *cert. denied*, 475 U.S. 1029, 106 S.Ct. 1231, 89 L.Ed.2d 340 (1986). The Court should consider the totality of the circumstances in determining whether any particular identification technique violated due process. *See Stovall, supra*, 388 U.S. at 302, 87 S.Ct. at 1972 ("a claimed violation of due process of law in the conduct of a confrontation depends on the totality of the circumstances surrounding it").

condemned." *Stovall, supra,* 388 U.S. at 302, 87 S.Ct. at 1972. Show-ups tend to be the "most suggestive" technique. *United States v. Henderson,* 719 F.2d 934, 937 (8th Cir.1983) (citation omitted). Under various circumstances, however, suggestive identification procedures have been upheld as sufficiently reliable. For example, in *United States v. Ofarril, supra,* the Second Circuit concluded that an officer's identification of a suspect while in custody in a holding cell is not suggestive *per se* and does not violate due process when the identifying officer viewed the suspect for a few minutes during a drug purchase, when the arresting officer confirmed the suspect's description and when the post-arrest identification took place shortly after the sale. 779 F.2d at 792. In addition, on-the-scene identifications by officers involved in the investigation are encouraged as a means of avoiding mistaken arrests. The Second Circuit has commented that "where a police officer has or should have doubts whether a detained suspect is in fact the person sought, the officer must make 'immediate reasonable efforts to confirm the suspect's identity.'" *Valez, supra,* 796 F.2d at 27 (quoting *United States v. Glover,* 725 F.2d 120, 123 (D.C.Cir.1984), *cert. denied,* 466 U.S. 905, 104 S.Ct. 1682, 80 L.Ed.2d 157 (1984)); *see also Johnson v. Dugger,* 817 F.2d 726, 729 (11th Cir.1987) (although show-ups are "widely condemned", immediate identifications permit quick release of innocent persons).

█ In the present case, the undercover officers had more than an adequate opportunity to observe the suspects in question. During the September 30 transaction, U/C I was within a few feet of both Cosme and Medina for approximately five minutes. Parrino Affidavit at ¶ 2. The second undercover, U/C II, was in the presence of Cosme on October 6 for approximately three to four minutes. *Id.* at ¶ 6. These amounts of time have been held to be sufficient. *See Leonardi, supra,* 623 F.2d at 755–56 (20–25 seconds adequate) (citations omitted). Each undercover, in separate cars, drove by the suspects as they were being held and identified them as the ones with whom they had transacted. Defen-

dants have not questioned the officers' degree of attention, and the Court assumes that it was high since the officers were acting in their capacity as trained undercover agents. In addition, the delay of a few hours or even six days between the alleged transactions and the identifications is not a basis for suppression, at least under the circumstances of this case. *See Leonardi, supra,* 623 F.2d at 756 (three-and-one-half month delay between incident and victim's identification of photograph not dispositive).

After each of the alleged transactions, the undercovers contacted the field team by radio and provided a description of the defendants. In a supplemental affidavit, requested by the Court, the government has provided some of the details surrounding these identifications. Sergeant Parrino states that U/C I, who allegedly purchased crack from Cosme, Medina and Ricardo Viscioso on September 30, 1988, described Cosme "as a male hispanic, approximately 5' 9" tall, of slim build and with a short 'afro' style haircut." Supplemental Affidavit of Roger Parrino, dated March 29, 1989, at ¶ 3. Cosme was also reported wearing a white shirt with a red stripe across the chest as well as the lettering "U.S.C." The undercover described Medina "as a male hispanic, approximately 5' 10" tall, and with a short 'afro' style haircut." Medina was wearing a black leather jacket, acid wash jeans, and black-framed eyeglasses. *Id.* at ¶ 4. Surveillance photographs were taken of Medina and Cosme on September 30, 1988. According to Parrino, the photographs matched the descriptions of the dress of the defendants as described by the undercover. The undercover, approximately one hour after the transaction on September 30, identified Cosme and Medina from an observation post. A second undercover, U/C II, who allegedly bought crack from Cosme and others on October 6, "described Cosme as a male hispanic wearing a white jacket." Suppl. Parrino Affidavit at ¶ 7. After their arrest, the police recorded Cosme's "pedigree" information as a male hispanic, 5' 10" tall, 145 pounds, with curly and kinky hair. *Id.* at ¶ 9. Medina was recorded as a male hispanic, 5' 9" tall, 180 pounds, with an afro haircut.

In a letter to the Court dated March 31, 1989, defendant Medina's counsel states that the photographs were taken at a distance, making it "difficult to compare a general description with the images on the photograph", and that the person purported to be one of the defendants in the photograph wore a mustache, a feature not mentioned in the undercover's description.

Although the information provided by the government does not remove all the Court's doubts, it appears that under the totality of the circumstances the identification information is reliable. The police did not rely on any single description or identification in making the arrests, but used a variety of procedures in an apparent effort to identify the suspects accurately. Had the undercover merely given the very general descriptions described above and had another officer made the arrests based on that information alone, the Court would most likely conclude that the arrests were made without probable cause, based on the analysis in *Fisher* and *Rosario*, discussed above, and suppression of the physical evidence siezed would be warranted. Similarly, the identification procedure would be unreliable because of the generality of the descriptions and suppression of identification testimony would be warranted. In this case, however, the undercovers gave a description of the suspects to the field team, surveillance photographs were separately taken and used to confirm the descriptions, and the undercovers then identified the suspects shortly after the alleged transactions and again after the arrests of the suspects. Thus, while the show-up procedures used were suggestive, and while a post-arrest line-up is preferable, the Court cannot conclude either that the police did not have a reasonable basis for believing that the persons arrested were the same persons whom they suspected of committing crimes or that the identification procedures are so unreliable that defendants' due process rights are violated. The motions by defendants Cosme and Medina to suppress the physical evidence for lack of probable cause and to suppress identification testimony based on unreliable procedures are thus denied.

Other Requested Relief

At a conference before the Court on March 10, 1989, the Court disposed of the defendants' other requests. The Court denied without prejudice Medina's request to suppress evidence of prior bad acts or convictions. The government should notify the Court and defendants sufficiently in advance of trial of its intention to introduce such evidence so that the Court may consider the issue. The Court granted Nelson Viscioso's request for a bill of particulars as to certain items, specifically requests a) through e) and i).[5] The Court denied Nelson Viscioso's additional discovery requests, and denied his requested severance without prejudice to further consideration at a later date.

## CONCLUSION

For the reasons stated above, the Court denies all moving defendants' motions to suppress physical evidence and identification testimony. The Court has dealt with the other requested relief as noted in the preceding paragraph.

SO ORDERED.

---

5. These requests seek information regarding Nelson Viscioso's role in the transactions involving defendants Medina, Mercado and Cosme on both September 30 and October 6, as well as information concerning Nelson Viscioso's contact with these individuals on other occasions.