UNITED STATES of America

v.

**Fred M. GLOVER aka Blackbuster, Appellant.**

No. 83–1176.

United States Court of Appeals, District of Columbia Circuit.

Argued Sept. 30, 1983.

Decided Jan. 17, 1984.

Certiorari Denied March 26, 1984. See 104 S.Ct. 1682.

Alan M. Palmer, Washington, D.C., for appellant.

Mary Incontro, Asst. U.S. Atty., Washington, D.C., with whom Stanley S. Harris, U.S. Atty. (at the time the brief was filed), Michael W. Farrell and Theodore A. Shmanda, Asst. U.S. Attys., Washington, D.C., were on the brief, for appellee.

Before BORK and SCALIA, Circuit Judges, and WILLIAMS,* Senior District Judge, United States District Court for the Central District of California.

Opinion for the Court filed by Senior District Judge DAVID W. WILLIAMS.

DAVID W. WILLIAMS, Senior District Judge:

This case concerns the validity of a warrantless arrest of appellant Glover for carrying a gun without a license. The arresting officers mistook Glover for a fugitive they were seeking named Larry Mathis. Glover moved to suppress the gun as evidence but the District Court denied his motion, 555 F.Supp. 604. After a bench trial on stipulated evidence Glover was convicted of a violation of D.C.Code § 22–3204. We affirm.

### I.

Larry Mathis and two other men were indicted for a murder which occurred on September 25th, 1981. In May, 1982, FBI agents became involved in the case because the police received confidential information that Mathis was connected to death threats against certain homicide and narcotics officers and the federal prosecutor who handled the Grand Jury investigation which resulted in the indictment of Mathis and the others (Tr. 13–14). On July 30th, 1982, a bench warrant was issued for Mathis's arrest. He was considered armed and dangerous and his capture was eagerly sought.

None of the FBI agents involved in the search had previously seen Mathis. They were supplied with photographs of him and of his known associates, including Glover.

Both Mathis and Glover are black males; at that time Mathis was 32 years old, dark complexioned, 5′11″ tall, weighed 180 pounds and wore a short beard and mustache. Glover was a little taller, darker and older, and was described as weighing 10 pounds less than Mathis. He had no facial hair in the photograph of him supplied to the FBI. Both these men were well-known to the local police involved in the search for Mathis.

The pace of the search for Mathis greatly accelerated in September. Several confidential civilian sources provided information, which in conjunction with police observations established the following: (a) Mathis knew he was wanted and was running (Tr. 8); (b) he was seen on August 6th as a passenger in a Mercedes Benz driven by Glover in the 900 block of French Street (Tr. 18); (c) he was seen on September 15th in the same block driving a dark-colored Dodge bearing D.C. license plate number 736–798; (d) the car was determined to be registered to Susie May Herring of 429 N Street, S.W., apartment 501 (Tr.23); (e) on September 22nd, an officer saw Mathis driving the same Dodge but lost it in pursuit (Tr. 25–26); and (f) police sources had seen Mathis and Glover enter the N Street apartment building and go to apartment 501 (Tr. 55–57, 75–76).

Day and night surveillance of the N Street apartment took place between September 22nd and 24th. FBI agent Deborah Martin made several spot checks of the area and at about 7 p.m. on September 24th, she received a radio message intended for agent Heieck which stated that "the individual we had been looking for had just arrived at the apartment and that the car was parked out front." (Tr. 103). She immediately drove to the N Street address and saw the Dodge parked nearby. She made herself inconspicuous and awaited the expected arrival of other units.

Meanwhile, agent Mardigian formulated a plan to contain movement of the Dodge and at the same time to arrest Mathis who

---

* Sitting by designation pursuant to 28 U.S.C. § 294(d).

was thought to be in apartment 501 (Tr. 156). Mardigian sought to verify the location of the Dodge and rode with agent Vatter to the position where it was sighted. As they approached the Dodge, Mardigian was startled to see a black male leaning against it. He was able to view the man for only a few seconds, but nevertheless concluded that the man "very strongly resembled the photograph" of Mathis although he didn't have any noticeable facial hair. (Tr. 160–61, 187–88). When he was out of the man's view Mardigian announced to other agents that he had seen an individual leaning against the Dodge. (Tr. 160). Through her rear-view mirror agent Martin noticed a black male leaning against the Dodge in a manner which she thought indicated he was either its owner or knew who was (Tr. 110).

Using a mobile telephone in his car Mardigian called his civilian source within the apartment building to find out whether Mathis had left the building. The source stated that the person they were looking for had left the building and was no longer wearing a hat or coat.[1] At this point apparently, Mardigian notified other agents by radio that the man was Mathis. (Tr. 110–12). Suddenly an unexpected event occurred which caused the immediate scrapping of the containment plan the agents had decided upon. A white Mercedes pulled up near the Dodge and the man who had been leaning against it entered the rear seat of the Mercedes and it drove away. Agent Mardigian thought the man leaning against the car was Mathis and that he was about to escape. Using his radio he called other agents and ordered the car stopped. Agents quickly ran toward it with drawn guns. Agent Chmiel pushed his gun through the driver's side window, pointed it at the passenger in the rear seat and said "FBI—don't move Mathis." (Tr. 302). The occupant of the rear seat was rapidly hustled out of the car and placed face-down on the ground. After handcuffing him, Mardigian attempted to assist him to his feet and

noticed that he had a gun in his waistband. As soon as the arrested person was brought to his feet the agents realized he was not Mathis.

## II.

The arrest of a person who is mistakenly thought to be someone else is valid if the arresting officer (a) has probable cause to arrest the person sought, and (b) reasonably believed the person arrested was the person sought. *Hill v. California,* 401 U.S. 797, 802, 91 S.Ct. 1106, 1110, 28 L.Ed.2d 484 (1971); *United States v. McEachern,* 675 F.2d 618, 621 (4th Cir.1982); *Sanders v. United States,* 339 A.2d 373, 379 (D.C.Ct. of Appeals 1975). The agents in this case clearly had probable cause to arrest Mathis and possessed a warrant for his arrest. We must, therefore, address the remaining question whether their belief that appellant Glover was Mathis was reasonable.

The agents' subjective good-faith belief alone is insufficient to validate the arrest. *Hill,* 401 U.S. at 804, 91 S.Ct. at 1110–1111. The reasonableness of the arresting officers' conduct must be determined by considering the totality of the circumstances surrounding the arrest. *United States v. Allen,* 629 F.2d 51, 56 (D.C.Cir.1980); *United States v. Young,* 598 F.2d 296, 298 (D.C.Cir.1979). Thus, the Court must consider the facts as a whole to determine whether there is a reasonable basis for the agents' belief that Glover was the fugitive Mathis.

In *Hill,* the Supreme Court noted that "sufficient probability, not certainty is the touchstone of reasonableness under the Fourth Amendment." 401 U.S. at 804, 91 S.Ct. at 1111. The agents established that Mathis had been seen driving the Dodge car on at least two recent occasions. Further, Mathis and Glover had been seen entering the apartment of the woman who owned the Dodge. While on surveillance, the agents were informed that Mathis had ar-

---

1. An earlier report from the informant indicated that Mathis was wearing a brown felt hat

and a green leather jacket (Tr. 188).

rived at the N Street apartment and that the Dodge was parked out front. Appellant was seen leaning against the car and agent Mardigian felt he "strongly resembled" Mathis. Appellant and Mathis were similar physically, a difference of approximately ten pounds in weight and two inches in height is negligible especially when a person is being viewed from a distance as was the case here. Further, although Glover and Mathis had different complexions, such nuances are difficult to distinguish under the twilight conditions the agents faced. The most telling difference between Glover and Mathis was Glover's lack of facial hair. Mardigian did not perceive any noticeable facial hair on the man leaning against the car. It is not unreasonable, however, for one to assume that a dangerous criminal on the run would eliminate his most telling characteristic, a beard.

Mardigian did have some doubt whether the individual leaning against the car was Mathis. In such cases the officer must make immediate reasonable efforts to confirm the suspect's identity. *Sanders v. United States,* 339 A.2d at 379. Mardigian telephoned his civilian source inside the building who informed him that the person they were looking for had left the building and was not wearing the hat and coat he wore when he came in. The person leaning against the Dodge was not wearing a hat or coat. Given this information, Mardigian could reasonably reaffirm his belief that the person leaning against the Dodge was Mathis. The facts establish that there was "sufficient probability" that the man leaning against the Dodge was Mathis and the agents' mistake is understandable.

The sudden appearance of the Mercedes on the scene is a factor in the agents' conduct which this court cannot ignore. Agent Mardigian was convinced that it was Mathis entering the Mercedes and he did not want to let a dangerous criminal escape. Thus, "viewed through the eyes of a reasonable and cautious police officer on the scene, guided by his experience and training," *United States v. Young,* 598 F.2d at 298, the arrest of Glover was "a reasonable response to the situation facing [the agents] at the time." *Hill,* 401 U.S. at 804, 91 S.Ct. at 1111. We are convinced that had the agents even suspected that the occupant of the car was not Mathis, they would have refrained from springing the trap. It is highly conceivable that their mistake may have alerted an onlooking Mathis and alerted him to flee. Thus, up until the moment that Chmiel pushed his gun through the driver's window and pointed it at Glover, it was reasonable for the agents to believe that the man they were arresting was Mathis. The only difficulty is whether the interval of about thirty seconds during which Chmiel had his gun trained on Glover was sufficient under the circumstances to lead a reasonable man to realize that he had the wrong person and that he therefore should not proceed with the arrest. When these circumstances are recited, however, we believe the question answers itself. Unlike Mardigian, Chmiel had never actually seen Mathis before, although he had seen his picture. He was looking at Glover, who was in the back seat of the car, through the driver's window, in the twilight. The situation was very tense. Given all the reasons Chmiel had for believing the man in the car was Mathis, whose extreme dangerousness had been emphasized by the teletype accompanying the warrant for his arrest, it would be quite reasonable for an agent to spend those thirty seconds wondering whether the man in the car was about to pull a gun rather than conducting a mental check of his identification. Under the circumstances, Chmiel's failure to realize that the man in the car was not Mathis and his actions in proceeding with the arrest were justified under the standards of *Hill* and *Young, supra.*

Appellant cites *United States v. Rosario,* 543 F.2d 6 (2d Cir.1976) and *State v. Frazier,* 318 N.W.2d 42 (S.Ct.Minn.1982) as support for his position that it was unreasonable for the agents to mistake him for Mathis. In *Rosario* the police were after a narcotics dealer named Gonzalez. At each drug transaction between Gonzalez and an undercover agent, another man named "Angel" was present and participated in the

transaction. When Gonzalez was arrested another man was present and when asked to identify himself, he responded "Angel." Upon hearing the name Angel, the officer arrested the man and a subsequent search of his person resulted in the discovery of heroin. The arrestee, Angelo Rosario, was not Gonzalez's accomplice. The Second Circuit found there was no "probable cause" to arrest Rosario and affirmed the District Court's order suppressing the evidence.

We decline to follow *Rosario* because the majority in that case, whether or not it reached the correct result, employed what we conceive to be the wrong analysis. The police arrested Angel Rosario under the mistaken impression that he was the "Angel" who had helped Gonzalez sell heroin to the police. Similarly, in this case, the defendant was arrested on the belief that he was the sought-after fugitive, Larry Mathis. The *Rosario* majority focused on whether there was probable cause to arrest Rosario when the correct inquiry, under *Hill*, should have been whether there was probable cause to arrest the man for whom the police mistook Rosario and whether the mistake in identification was reasonable. We employ the *Hill* test here. There was a warrant for the arrest of Mathis and we think mistaking Glover for Mathis was reasonable under the circumstances.

In *Frazier* the police had a warrant for the arrest of one Terri Norman. While on duty, police officers saw defendant outside a bar at which the person sought had been seen earlier. The officers were about 500 feet from the defendant and in a dimly lit area. Nevertheless, they concluded that defendant was the person they were looking for and arrested her. A gun for which defendant did not have a license was found in her purse. The court suppressed the gun as evidence, ruling that the defendant's arrest was illegal because she did not look like the suspect and the arrest did not occur at the suspect's residence or at a place which the police reliably knew she frequented. The court concluded that the police officers acted hastily in deciding that defendant was the suspect.

In this case, there was nothing hasty about the way the agents determined that appellant was the fugitive Mathis they were seeking. The agents consulted informants who provided information which buttressed the agents' belief that the man leaning against the Dodge was Mathis. Further, Mathis was known to drive the Dodge and to visit the owner of the car. Thus, the agents were in an area that Mathis frequented. We find the agents' mistake to be reasonable and affirm the District Court's order.