# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 02-3220

_____

Brian Arthur Hill,                              *
                                                *
        Plaintiff-Appellant,                    *
                                                *   Appeal from the United States
    v.                                          *   District Court for the
                                                *   District of Minnesota.
Patrick Scott; Catherine Pavlak;                *
Mark Pierce, all individually and in            *
their professional capacities as St. Paul       *
police officers;                                *
                                                *
        Defendants-Appellees,                   *
                                                *
Michael Rasmussen; Jerome Steffen;              *
                                                *
        Defendants,                             *
                                                *
City of St. Paul,                               *
                                                *
        Defendant-Appellee.                     *

_____

Submitted:  May 14, 2003

Filed:  November 14, 2003

_____

Before BOWMAN, HEANEY and BYE, Circuit Judges.

_____

BYE, Circuit Judge.

Brian Arthur Hill filed this action pursuant to 42 U.S.C. § 1983 claiming three officers of the St. Paul Police Department violated his Constitutional rights and state tort law when they arrested and detained him. The district court granted summary judgment for defendants on the grounds the defendants are protected from the federal claims by qualified immunity, Hill failed to establish his tort claims, and defendants were protected from the state claims by state official immunity. Hill appeals, arguing he proffered sufficient evidence to show the officers violated his clearly established rights. We affirm.

I

Pursuant to the proper standard of review, described below, the following are undisputed facts. Brian Arthur Hill was arrested just inside the doorway of his home by Officers Catherine Pavlak and Mark Pierce of the St. Paul Police Department. Pavlak and Pierce arrested Hill because Officer Patrick Scott told them there was a warrant for Hill's arrest. Officer Scott had a previous history with Hill. In 1995, Hill sued Scott and other officers for wrongful arrest and excessive force, and defendants settled on the eve of trial. The events at issue in this action occurred less than one year after the settlement.

The events leading up to the arrest began when St. Paul Parking Enforcement Officer Michael Rasmussen attempted to take possession of a disabled parking permit issued to Hill's father. The Hills had reported one of their two permits stolen and Rasmussen believed the permit hanging in Hill's sister's car was the one reported stolen. Hill disputes the permit was the one reported stolen and claims Rasmussen had no right to take it back. Hill objected strongly to giving the permit to Rasmussen, who felt threatened and called for police back-up. Officers Scott, Pavlak and Pierce responded to the scene.

Officer Scott did not participate in the actual arrest of Hill – such task being performed by Officers Pavlak and Pierce. But Scott's actions leading to the arrest are at issue, and are as follows. When the three officers arrived, Scott recognized Hill and asked a dispatcher to conduct a warrant check on him. Specifically, Scott asked the dispatcher for information on first name "Brian" last name "Hill," a black male in his late 20s, with a possible address of 1081 Hague and possibly a suspended license. The dispatcher replied there was an outstanding misdemeanor traffic warrant on a Brian Walter Hill, born August 19, 1972, who was 5'11" and 175 pounds with green eyes, on the charge of driving with no proof of insurance. The dispatcher did not confirm or deny any other information. Scott believed the warrant was for appellant Hill and told Officers Pavlak and Pierce there was an arrest warrant out for Hill. Hill vehemently denied having a warrant. The officers tried to arrest Hill on the warrant but he resisted and retreated into his house. Officers Pavlak and Pierce followed him inside and one grabbed an arm. Hill and his sister fought with the officers. The officers sprayed Hill and his sister with mace and arrested both for obstructing legal process.

After Hill's arrest, Pavlak and Pierce transported Hill to a hospital for treatment for the mace exposure. Meanwhile, Scott called the dispatcher with more specific information about Hill, namely, his birth date of April 24, 1970. The dispatcher responded the Brian Hill with that birth date was Brian Arthur Hill, not Brian Walter Hill, and there were no outstanding warrants for Brian Arthur Hill. That information was communicated to Officers Pavlak and Pierce who had custody of Hill at the hospital. Pavlak and Pierce declined Hill's request to be released and booked him on a charge of obstructing legal process for the scuffle at the Hill residence. Hill was ultimately released without being charged for that or any other offense arising from these events.

Hill filed an eleven-count complaint against five individual defendants and the City of St. Paul. Those were winnowed down to the following four claims:

(1) Officer Scott violated 42 U.S.C. § 1983 by failing to verify the information received from the dispatcher; (2) Officers Pavlak and Pierce violated § 1983 by failing to release Hill when they learned there was no warrant for him; (3) Scott, Pavlak and Pierce committed state law torts of false arrest and Scott intentionally inflicted emotional distress on Hill; and (4) the City is also charged for being vicariously liable for state-law torts. The defendants moved for summary judgment on the basis of qualified immunity and the district court granted the motion. Hill appeals.

II

Appellate review of a grant of summary judgment is made de novo, applying the same standard as the district court. The question is whether, when all evidence and reasonable inferences are drawn in the light most favorable to the plaintiffs, the record shows the existence of any material fact. Graves v. Arkansas Dept. of Fin. & Admin., 229 F.3d 721, 723 (8th Cir. 2000). Summary judgment will only be granted if the evidence shows "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). The district court granted summary judgment on the basis of qualified immunity.

Qualified immunity is available to government officials who prove their conduct did "not violate clearly established statutory or Constitutional rights of which a reasonable person would have known." Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982). To avoid summary judgment based on qualified immunity, Hill had to proffer sufficient evidence to find a violation of a Constitutional right, show the alleged right was clearly established at the time of the alleged violation, and raise a genuine issue of material fact about whether reasonable officers would have known their conduct would have violated this clearly established right. Smithson v. Aldrich, 235 F.3d 1058, 1061 (8th Cir. 2000). If an officer alleges conduct by an arrestee giving rise to probable cause and those facts are undisputed, the officer is entitled to qualified

immunity. <u>Arnott v. Mataya</u>, 995 F.2d 121, 123-24 (8th Cir. 1993). If, however, the arrestee challenges the officer's description of the facts and presents a factual account that would not permit a reasonable officer to make an arrest, then there is a material factual dispute precluding summary judgment. <u>Id.</u> at 124.

A.    Officer Scott's Acts Before the Arrest

The Fourth Amendment right of citizens not to be arrested without probable cause is clearly established. <u>See</u> <u>Habiger v. Fargo</u>, 80 F.3d 289, 295 (8th Cir. 1996). To prevail on this claim, Hill must (1) show Scott had no probable cause to arrest him, and (2) raise a genuine issue of material fact about whether reasonable officers would have known Scott's conduct would have violated the Fourth Amendment. <u>Smithson v. Aldrich</u>, 235 F.3d at 1061. Hill argues Scott had no probable cause to arrest him, and a reasonable officer would have known there was no probable cause, because (1) differences between the information the dispatcher gave Scott about the wanted Brian Hill and what Scott knew about appellant Hill should have given Scott notice the warrant was for someone else, and (2) Scott should have investigated further to determine if appellant Brian Hill was the person named in the warrant.

Hill points to <u>Kuehl v. Burtis</u>, 173 F.3d 646 (8th Cir. 1999), for support. In <u>Kuehl</u> a panel of the Eighth Circuit found qualified immunity does not protect an officer who unreasonably fails to investigate sufficiently before arresting a suspect. <u>Id.</u> at 651. In that case an officer investigating a fight ignored an independent witness's statement exculpating Kuehl of assault, refused to speak with Kuehl for more than twenty seconds, ignored physical evidence consistent with Kuehl's story she was the victim, not perpetrator, of assault, and omitted most exculpatory evidence from his police report. <u>Id.</u> at 648. In holding the officer's failure to fully investigate before arresting Kuehl violated her Fourth Amendment rights, the Court said, "law enforcement officers have a duty to conduct a reasonably thorough investigation prior to arresting a suspect, at least in the absence of exigent circumstances and so long as

'law enforcement would not [be] unduly hampered . . . if the agents . . . wait[ ] to obtain more facts before seeking to arrest.'" Id. at 650 (quoting, United States v. Woolbright, 831 F.2d 1390, 1394 (8th Cir. 1987)).

The undisputed facts of this case are materially distinguishable from those in Kuehl. First, none of the information provided to Scott by the dispatcher contradicted what Scott knew of Hill before the arrest. The first and last names were identical, the two Brian Hills are only two years apart in age, and there was only one inch difference in height and twenty-five pounds difference in weight. Hill argues Scott should have known the wanted Brian Hill was Caucasian because the dispatcher told Scott the warrant was for a Brian Hill with green eyes. But as Hill concedes in his brief, some African Americans (though rare) have green eyes. Unlike Kuehl, there were no contradictions between the dispatcher's description and Hill that would have prompted a reasonable officer to investigate more fully. Second, in Kuehl, the officer was investigating a possible crime after the fact and based his assessment of probable cause for arrest on his shoddy investigation. In this case there was a facially valid warrant for the arrest of someone with a description remarkably close to appellant Hill.

Instead of Kuehl, we are inclined to look to similar cases where officers mistook the arrestee for the subject of a warrant. The rule in those cases is that mistaken arrest based on a facially valid warrant does not violate the Fourth Amendment if the officers reasonably mistook the arrestee for the person named in the warrant. Hill v. California, 401 U.S. 797, 802 (1971) ("When the police have probable cause to arrest one party, and when they reasonably mistake a second party for the first party, then the arrest of the second party is a valid arrest."). We answer this question by looking at the totality of the circumstances surrounding the arrest to determine its reasonableness. Rodriguez v. Farrell, 280 F.3d 1341, 1347 (11th Cir. 2002) cert. denied, ___ U.S. ___, 123 S.Ct. 1482 (2003); Patton v. Przybylski, 822 F.2d 697, 699-700 (7th Cir. 1987); United States v. Glover, 725 F.2d 120, 122 (D.C.

Cir. 1984) ("The reasonableness of the arresting officers' conduct must be determined by considering the totality of the circumstances surrounding the arrest."). Given the remarkably similar descriptions of the two Brian Hills, we find the officers were reasonable in mistaking the one for the other. See Brady v. Dill, 187 F.3d 104, 114 (1st Cir. 1999) (noting mistakenly arresting person of a different race was not unreasonable and stating that "courts have concluded with some regularity that relatively minor discrepancies in physical features or other data do not render unreasonable an arrest pursuant to a facially valid warrant."); Johnson v. Miller, 680 F.2d 39, 42 (7th Cir. 1982) (concluding police officer's misidentification arrest of a white woman pursuant to an arrest warrant for a black woman did not violate the Constitution); see also Rodriguez, 280 F.3d at 1346-49 (holding a mistaken arrest was reasonable and thus did not constitute a Constitutional violation for purposes of § 1983 where the plaintiff shared the same name, sex, age, and race as the fugitive, had a similar Social Security number, and lived in a neighboring town); Blackwell v. Barton, 34 F.3d 298, 303-04 (5th Cir. 1994) (holding an officer was reasonable in arresting § 1983 plaintiff with the same first name and similar physical characteristics as those listed on the warrant); Brown v. Patterson, 823 F.2d 167, 169 (7th Cir. 1987) (holding an officer was reasonable to arrest § 1983 plaintiff with the same name and race, but otherwise different identifying information, as was listed on the warrant).

Hill argues Scott should not have relied upon the consistencies between the warrant information and appellant Hill, rather, Scott should have conducted further investigation by asking Hill or his family for Hill's date of birth or middle name. Had Scott been able to confirm Hill's date of birth or middle name before the arrest he would have had more reason to doubt Hill was a wanted man.[1] There may have been

---

[1]We do not decide the related question of whether it would have been a violation of the Fourth Amendment if Scott had arrested Hill despite knowing his birthdate and middle name were different from the ones on the warrant. Some courts have found Constitutional arrests with similar differences between arrestee and the subject of the warrant. See, e.g., Patton, 822 F.2d at 698-99 (concluding officer's

no arrest and ensuing struggle. Such a result would have been preferable for everyone involved, and in hindsight Scott should have taken the extra step. But that is not the question before us, and hindsight is not the standard. The issue is whether Scott's failure to investigate the birth date violated Hill's Constitutional rights, and whether a reasonable officer would know such a failure would be a Constitutional violation. This is not a situation where Scott knew Hill was not the subject of the warrant, or where Scott knew further investigation would have revealed there was no warrant for Hill. This is a case where further investigation would have cast doubt on whether Hill was the subject of the warrant. But that is always the case where an arrestee denies being the subject of a facially valid warrant; there can always be more investigation to verify identity. The question is, how much investigation does the Constitution require? In light of all the circumstances, we hold Scott had sufficient consistent identifying information to reasonably conclude the warrant was for appellant Hill and no reasonable officer would have known failing to investigate further would violate the Fourth Amendment.

B.    Officers Pavlak and Pierce:  Continued Detention

Hill does not allege Pavlak and Pierce violated his rights with his initial arrest because, as he acknowledges, they had no reason to disbelieve Scott's information of there being a warrant for Hill. Instead, Hill claims Pavlak and Pierce violated his Constitutional rights when they refused to release him after they found out there was no warrant for his arrest. "Continuing to hold an individual in handcuffs once it has been determined that there was no lawful basis for the initial seizure is unlawful within the meaning of the Fourth Amendment." Rogers v. Powell, 120 F.3d 446, 454 (3d Cir. 1997). However, there may be a separate, independent basis for the

---

arrest of man with same first and last name as the subject of a warrant was Constitutional despite the fact the arrestee had driver's license from a different state, an address different from the one in the arrest warrant, and different date of birth).

continued detention.  Id.  The district court found, and Pavlak and Pierce now argue, they had probable cause to arrest Hill because his violent resistance to arrest was obstruction of legal process.  We agree.

Under Minnesota law, it is a misdemeanor if a person "(1) obstructs, hinders, or prevents the lawful execution of any legal process, civil or criminal, or apprehension of another on a charge or conviction of a criminal offense; [or] (2) obstructs, resists, or interferes with a peace officer while the officer is engaged in the performance of official duties . . . ."  Minn. State § 609.50.  The undisputed facts show Officers Pavlak and Pierce had probable cause to believe Hill violated this law because they witnessed (and directly experienced) his resistance of arrest.  Hill argues his resistance cannot be the basis of probable cause to believe he committed the crime of obstruction of legal process because he had a right to resist the arrest.  In Minnesota, there is a right to resist an unjustified bodily attack (a.k.a. excessive force) by an officer, but there is no right to resist an unlawful search or arrest.  State v. Kutchara, 350 N.W.2d 924, 927 (Minn. 1984); State v. Wick, 331 N.W.2d 769, 771 (Minn. 1983).  Hill had a right to resist only if Pavlak's and Pierce's use of force was improper or excessive.  However, Hill does not allege excessive force; and he admits he resisted arrest first, and then the officers became physical in response.  He argues he was resisting only because he believed they had no right to arrest him and was afraid they might use excessive force.  This is not a basis for lawful resistance in Minnesota.  Therefore, Officers Pavlak and Pierce had probable cause to believe Hill had committed the crime of obstruction of legal process and could retain him in custody even after discovering there was no warrant for his arrest.  They are entitled to qualified immunity for their actions.

C.    The Pendant State Law Claims

Hill alleges Officers Scott, Pavlak and Pierce are liable for the state law tort of false arrest; Scott is liable for intentional infliction of emotional distress; and the City

is vicariously liable for all of the above. The district court found the officers' conduct insufficient to meet the high threshold of intentional infliction of emotional distress and the arrest was reasonable for the same reason Hill's federal claims fail. We agree; the officers are immune and the City is not liable.

Under Minnesota law, the elements of intentional infliction of emotional distress are: (1) the defendant's conduct was extreme and outrageous; (2) the conduct was intentional or reckless; (3) it caused emotional distress; and (4) the distress was severe. Hubbard v. United Press Int'l, Inc., 330 N.W.2d 428, 438-39 (Minn. 1983). The conduct "must be extreme and outrageous, so atrocious that it passes the boundaries of decency and is utterly intolerable to the civilized community." Haagenson v. Nat'l Farmers Union Prop. & Cas. Co., 277 N.W.2d 648, 652-53 n.3 (Minn. 1979) (citation omitted). On a claim for intentional infliction of emotional distress, summary judgment is proper if a party does not meet the high standard of proof needed for the claim. Strauss v. Thorne, 490 N.W.2d 908, 913 (Minn. Ct. App. 1992).

The intentional infliction of emotional distress claim against Scott includes an additional factual twist. Hill alleges, and would testify, that during the confrontation Scott said, "Fuck you. Get your Black ass in the house." Scott denies making the statement, so we have a dispute of fact which cannot be resolved on summary judgment. But we do not need to resolve it. Even assuming Officer Scott made the obscene statement, his actions do not rise to the level of an intentional infliction of emotional distress. For the reasons described above, Officer Scott's investigation of Hill was reasonable. The use of such highly charged and insulting language, while highly improper and not to be condoned, does not raise Scott's otherwise proper and reasonable actions above the "bounds of decency" bar. Stead-Bowers v. Langley, 636 N.W.2d 334, 343 (Minn. Ct. App. 2001) ("The emotional distress must be so severe that no reasonable man could be expected to endure it."). Therefore, we affirm

summary judgment on the state law tort claim of intentional infliction of emotional distress.

Hill's state tort law claim of false arrest fails for the same reason discussed above: the officers reasonably believed there was a warrant for Hill's arrest when they first arrested him, and had probable cause to believe Hill committed obstruction of legal process when he resisted that arrest. State law provides official immunity for reasonable acts just as federal law provides qualified immunity for federal claims. Johnson v. Morris, 453, N.W.2d 31, 41-42 (Minn. 1990). Under Minnesota law, the question comes down to whether the officers acted "reasonably and lawfully under the circumstances." Perkins v. St. Louis County, 397 N.W.2d 405, 408 (Minn. Ct. App. 1986). The undisputed evidence shows the officers so acted. We therefore affirm summary judgment of the state law claims against the officers and City.

HEANEY, Circuit Judge, dissenting.

I concur in the majority's opinion as it relates to Officers Pavlek and Pierce, for they arrested Brian Hill only after Officer Scott informed them that a valid warrant had been issued for a Brian Hill. I disagree, however, that Officer Scott's cursory investigation into whether the warrant actually pertained to Plaintiff Brian Hill approached the level required to shield him from suit. I therefore respectfully dissent from that portion of the majority's opinion.

This matter comes to us on appeal from an order granting summary judgment on qualified immunity grounds. Thus, we view "the evidence *and the inferences which may be reasonably drawn from it* in the light most favorable" to Hill, the nonmoving party. Lambert v. City of Dumas, 187 F.3d 931, 934 (8th Cir. 1999) (emphasis added). Where a plaintiff alleges that he was unlawfully arrested, qualified immunity will only protect the arresting officer if the arrest was objectively reasonable. Ripson v. Alles, 21 F.3d 805, 808 (8th Cir. 1994). Officers may be

entitled to qualified immunity for mistakenly arresting suspects, so long as the mistake was a reasonable one. Kuehl v. Burtis, 173 F.3d 646, 649 (8th Cir. 1999). In the absence of exigent circumstances, a mistaken arrest is "reasonable" only when it follows a sufficient investigation establishing grounds for the intrusion. Id. at 650.

Prior to the current dispute, Hill had an unfortunate history with the St. Paul Police Department that spanned several years. In 1995, he was assaulted by officers outside a St. Paul bar and restaurant. Hill, an African American, alleged that at least one of the officers used a racial epithet during this encounter. Then, in 1996, St. Paul Police Officer Scott entered his home without a warrant to investigate a police call and assaulted Hill inside his home. During this second physical confrontation, Scott suggested Hill should have "learned his lesson" from the 1995 incident. Yet again in 1996, Hill was accosted by the St. Paul Police when officers attempted to arrest him on an invalid warrant at his house. Officers restrained Hill for a time, even though he shared very few characteristics with the wanted suspect. Hill sued the St. Paul Police Department and its chief due to the above incidents. In 1998, Hill settled the matter with the defendants, including Scott.

Less than a year after Hill settled his lawsuit, he was again faced with a conflict with the St. Paul Police Department, giving rise to the instant lawsuit. On June 15, 1999, Parking Enforcement Officer Rasmussen was outside Hill's house, trying to retrieve a disabled parking permit that had been reported stolen. Rasmussen and Hill got into an argument about the permit, and Rasmussen eventually called for back-up support. Scott was the first to respond to the call. When Scott arrived, he did not attempt to intervene, but rather waited for other support to arrive. Meanwhile, he decided to investigate whether Hill was wanted for any outstanding warrants.

Scott did not ask Hill, or anyone else, for Hill's date of birth, driver's license number, address, middle name, or any other identifying characteristic, before performing his warrant check. None of these identifying characteristics were

-12-

included in Scott's warrant check. Scott inquired simply whether any warrants were issued for a black male, late twenties, with a first name of Brian and last name of Hill, who had a possible address of 1081 Hague and a possible suspended driver's license. A warrant for a misdemeanor traffic offense was confirmed for a Brian Walter Hill, whose age, height, and weight approximated that of Plaintiff Brian Hill. Brian Walter Hill, however, had green eyes. The operator did not confirm the race or address for Brian Walter Hill, nor did she state whether his driver's license was suspended.

At this point, it was incumbent upon Scott to make a further inquiry. Qualified immunity should not be granted when minimal further investigation would have cleared the suspect. Kuehl, 173 F.3d at 650. The majority distinguishes between cases such as Kuehl, in which an officer fails to fully investigate before arresting a suspect, and those in which an officer mistakenly arrests the wrong person on an outstanding warrant. Assuming this distinction is valid, I agree that Officers Pavlek's and Person's conduct falls within the "mistaken arrest" category, for they arrested Hill based on faulty information from Scott. On the other hand, Officer Scott's behavior better fits the Kuehl line of cases, and his failure to investigate the validity of the warrant is inexcusable. Accord Edwards v. Baer, 863 F.2d 606, 608 (8th Cir. 1988) (finding arresting officer was entitled to qualified immunity from suit where officer sufficiently investigated whether warrant was valid).

A simple follow-up call to the operator requesting additional information such as the address of Brian Walter Hill, or a request for Hill's driver's license or birth date, or even a simple query about Hill's eye color, would have alerted Scott that this Brian Hill had no outstanding warrants. Scott did nothing, however, to confirm the warrant before broadcasting to his fellow officers that Hill was wanted. Thus, this is not a case like Edwards, where the arresting officer confirmed the existence of what turned out to be an invalid warrant twice before arresting the suspect. In that case, we held that the officer's additional investigation was reasonable in light of the totality of circumstances. Id. at 608-09. Here, even after Hill complained that he did

-13-

not have a warrant outstanding against him, Scott did not perform even the slightest further examination to determine if Hill was telling the truth.

The district court held that further investigation was not practicable in part because the situation called for quick action. See Kuehl, 173 F.3d at 650 (holding officer's failure to fully investigate before arresting may be justified by exigent circumstances). The evidence presented, however, does not support this characterization of the facts. Brian Walter Hill's warrant was for a misdemeanor traffic offense, not an inherently dangerous or violent crime. Due to the nature of the warrant, St. Paul Police Department policy afforded the officers discretion to merely advise Hill of the warrant; they were not required to arrest him. In other words, no arrest was necessary, and there was no need to act quickly to effectuate an arrest before finding out if one was authorized. Scott knew the nature of the warrant, and knew that he did not have to arrest Hill on this type of warrant. Moreover, there is no evidence that Hill presented a flight risk. On the contrary, he has lived at the same address in St. Paul for nearly his entire life. Particularly in light of Hill's adversarial history with Scott and the St. Paul Police Department, Scott's actions are not reasonable as a matter of law.

In short, Scott cannot be excused for his failure to sufficiently investigate whether Plaintiff Brian Hill was the true subject of the warrant. With minimal further inquiry, Scott would have spared Hill from yet another unjustified intrusion of Hill's liberty. I would therefore reverse the district court's grant of summary judgment as it related to Officer Scott.

_____