**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**August 1, 2017**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

JOANNA STARRETT,

    Plaintiff - Appellant,

v.

CITY OF LANDER; LANDER POLICE
DEPARTMENT; R. CECRLE, Police
Chief, in his official and individual
capacities; J. RAMSEY, Police Officer, in
his official and individual capacities;
W. ROMERO, Police Officer, in his
official and individual capacities; JOHN
DOES, Police Officers, in their official and
individual capacities,

    Defendants - Appellees.

No. 16-8124
(D.C. No. 2:15-CV-00200-KHR)
(D. Wyo.)

_____

**ORDER AND JUDGMENT**[*]
_____

Before **MATHESON**, **McKAY**, and **MORITZ**, Circuit Judges.
_____

    Joanna Starrett appeals the district court's grant of summary judgment based

on qualified immunity to two police officers on her Fourth Amendment claims of

---

[*] After examining the briefs and appellate record, this panel has determined
unanimously that oral argument would not materially assist in the determination of
this appeal. *See* Fed. R. App. P. 34(a)(2); 10th Cir. R. 34.1(G). The case is therefore
ordered submitted without oral argument. This order and judgment is not binding
precedent, except under the doctrines of law of the case, res judicata, and collateral
estoppel. It may be cited, however, for its persuasive value consistent with
Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

unlawful arrest and excessive use of force. Exercising jurisdiction under 28 U.S.C. § 1291, we affirm.

## I. BACKGROUND

Two City of Lander, Wyoming police officers responded to a domestic disturbance call at the trailer home of Edward and Joanna Starrett. The Starretts went outside to talk with them. Officer Ramsey stayed on the front porch with Mrs. Starrett, who appeared intoxicated and uncooperative, and Sergeant Romero walked a short distance away with Mr. Starrett. Although the Starretts' argument was only verbal, Mr. Starrett agreed to leave and "cool down" but indicated he would need to get his shoes from inside the trailer. Aplt. App., Vol. 1 at 112. Sergeant Romero said he would have to follow Mr. Starrett, to which Mr. Starrett responded "okay." *Id.* at 97. After Mr. Starrett entered the trailer, Mrs. Starrett stepped into the doorway and pulled the front door closed, telling Sergeant Romero, who intended to follow Mr. Starrett inside, that he could not enter because he did not "have a warrant." *Id.* at 141. According to Mrs. Starrett, Officer Ramsey then threw her to the ground.[1] Mrs. Starrett alleged that the fall resulted in a broken arm. Both

---

[1] Both officers testified at their depositions that prior to Officer Ramsey's taking Mrs. Starrett down, Sergeant Romero asked her to move out of the way and attempted to push past her, and a struggle ensued that, according to Sergeant Ramsey, injured his arm. The day after the incident, Mrs. Starrett dictated an account of what happened to her husband, who wrote it down. At her deposition some 16 months later, Mrs. Starrett admitted her recollection was hazy because of how quickly everything had happened, but in reviewing the written account, she testified that she did not think her hand was still on the doorknob when Officer Ramsey grabbed her, Aplt. App., Vol. 1 at 129, and she denied blocking the doorway after shutting the

(continued)

officers then subdued Mrs. Starrett and arrested her for interference under the City of

Lander's municipal code.

Mrs. Starrett sued the officers, the City of Lander, the Lander Police

Department, and a police chief, seeking damages under 42 U.S.C. § 1983 for

unlawful arrest and excessive use of force in violation of the Fourth Amendment.

She also asserted several state-law claims. The district court granted summary

judgment to all defendants on the federal claims and declined to exercise

supplemental jurisdiction over the state claims. Mrs. Starrett appeals only the court's

determination that Sergeant Romero and Officer Ramsey, in their individual

capacities, were entitled to qualified immunity. She contests the district court's

conclusion that taking her to the ground and arresting her did not violate a clearly

established right. Our review is de novo. *Foote v. Spiegel*, 118 F.3d 1416, 1424

(10th Cir. 1997).

---

door, stating that she stepped aside, *id.* at 125–29. She also testified that she did not
"believe [Sergeant Romero] asked me to move out of the doorway. He didn't have
time to ask me that. When I shut the door, the other officer said, 'That's it,' and
threw me to the ground." *Id.* at 130.

The officers' narrative contradicts Mrs. Starrett's version of what happened
after she shut the door. Because we are reviewing a summary judgment order, we
must view the facts in the light most favorable to the non-moving party—Mrs.
Starrett. *See A.M. v. Holmes*, 830 F.3d 1123, 1136 (10th Cir. 2016), *cert. denied*,
137 S. Ct. 2151 (2017). Although we credit Mrs. Starrett's version, we note that, in
her briefs, she appears to rely on the officers' account of whether she continued to
hold the doorknob and physically resist Sergeant Romero's attempt to get past her.
*See* Aplt. Opening Br. at 12; Reply Br. at 8. As our discussion of the excessive-force
claim will show, accepting those facts as true does not rescue Mrs. Starrett from
summary judgment.

## II. GENERAL LEGAL FRAMEWORK

Qualified immunity generally shields government officials performing discretionary functions from civil liability if "their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982). "When a defendant asserts qualified immunity at summary judgment, the burden shifts to the plaintiff to show that: (1) the defendant violated a constitutional right and (2) the constitutional right was clearly established." *Martinez v. Beggs*, 563 F.3d 1082, 1088 (10th Cir. 2009). Courts have discretion to determine which prong to address first. *Id.* The district court decided both the unlawful arrest and excessive force claims on the second prong—that the rights at issue were not clearly established.

"A clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right." *Mullenix v. Luna*, 136 S. Ct. 305, 308 (2015) (per curiam) (internal quotation marks omitted). "Ordinarily, a plaintiff may show that a particular right was clearly established at the time of the challenged conduct by identifying an on-point Supreme Court or published Tenth Circuit decision; alternatively, the clearly established weight of authority from other courts must have found the law to be as she maintains." *A.M. v. Holmes*, 830 F.3d 1123, 1135 (10th Cir. 2016) (brackets and internal quotation marks omitted), *cert. denied*, 137 S. Ct. 2151 (2017). A directly on-point case is not always necessary because "general statements of the law are not inherently incapable of giving fair and clear warning" to government officials.

- 4 -

*United States v. Lanier*, 520 U.S. 259, 271 (1997). Even so, "existing precedent must have placed the statutory or constitutional question beyond debate." *Mullenix*, 136 S. Ct. at 308 (internal quotation marks omitted). As the Supreme Court has repeatedly instructed, "clearly established law should not be defined at a high level of generality" but "must be particularized to the facts of the case." *White v. Pauly*, 137 S. Ct. 548, 552 (2017) (per curiam) (internal quotation marks omitted). Recognition that a "case presents a unique set of facts and circumstances" is an "important indication" that the conduct at issue "did not violate a clearly established right." *Id.* (internal quotation marks omitted). Qualified immunity lies where "none of the cases [the parties rely on] *squarely governs* the case here." *Mullenix*, 136 S. Ct. at 309 (brackets and internal quotation marks omitted).

## III.  DISCUSSION

### A.  *Unlawful arrest*

Mrs. Starrett brought her unlawful-arrest claim against both Sergeant Romero and Officer Ramsey. She alleged that her warrantless arrest was made without probable cause.[2] "Probable cause to arrest exists only when the facts and circumstances within the officers' knowledge, and of which they have reasonably trustworthy information, are sufficient in themselves to warrant a man of reasonable

---

[2] The Fourth Amendment to the United States Constitution provides: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

caution in the belief that an offense has been or is being committed." *United States v. Valenzuela*, 365 F.3d 892, 896 (10th Cir. 2004) (internal quotation marks omitted). To decide the qualified immunity issue on an unlawful-arrest claim, "we ascertain whether a defendant violated clearly established law by asking whether there was arguable probable cause for the challenged conduct." *Stonecipher v. Valles*, 759 F.3d 1134, 1141 (10th Cir. 2014) (internal quotation marks omitted). "Arguable probable cause is another way of saying that the officers' conclusions rest on an objectively reasonable, even if mistaken, belief that probable cause exists." *Id.* A defendant "is entitled to qualified immunity if a reasonable officer could have believed that probable cause existed to arrest or detain the plaintiff." *Id.* (internal quotation marks omitted). In evaluating probable cause, we must view an arrest objectively. *Morris v. Noe*, 672 F.3d 1185, 1192 (10th Cir. 2012).

In district court, defendants Romero and Ramsey argued they had arguable probable cause to arrest Mrs. Starrett under Wyo. Stat. Ann. § 6-5-204(a), which makes a person guilty of a misdemeanor if she "knowingly obstructs, impedes or interferes with or resists arrest by a peace officer while engaged in the lawful performance of his official duties." They argued that it was constitutionally permissible for Sergeant Romero to accompany Mr. Starrett into the trailer to retrieve his shoes because it was getting dark, it was November in Wyoming (implying it was getting cold and Mr. Starrett needed his shoes to leave and "cool down"), there was no evidence Sergeant Romero wanted to accompany Mr. Starrett for pretextual reasons, the entry would only have been slight and temporary, and Sergeant Romero

- 6 -

was entitled to maintain safety at the scene. As to the last point, Sergeant Romero noted that Mrs. Starrett appeared drunk and that, when he had previously responded to a domestic disturbance call at the Starretts' residence, she had threatened to use a firearm on either herself or her husband. She responded that she had a Fourth Amendment right to revoke any consent her husband may have given to enter the trailer and she therefore should not have been arrested for interfering with what she claimed was an unlawful search or entry—one unsupported by a warrant, probable cause, or exigent circumstances.

The district court said that under *Georgia v. Randolph*, 547 U.S. 103, 115 (2006), Mrs. Starrett had the right to revoke any consent her husband might have given Sergeant Romero to enter the trailer while he retrieved his shoes. And the court observed that arresting Mrs. Starrett for interfering with a warrantless search would create tension with the Fourth Amendment given that, in *Mickelson v. State*, 906 P.2d 1020, 1023–24 (Wyo. 1995), the Wyoming Supreme Court ruled that interference with a peace officer's "lawful performance of his official duties" under § 6-5-204(a) does not occur when a citizen refuses consent to a search "at the threshold."[3]

---

[3] Because arguable probable cause in this case was based on a Wyoming criminal statute, the "precise scope" of Mrs. Starrett's right to be free "from an arrest without probable cause . . . uniquely depends on the contours of a state's substantive criminal law." *Kaufman v. Higgs*, 697 F.3d 1297, 1300–01 (10th Cir. 2012). Hence, the district court appropriately began its analysis by looking to Wyoming law.

But the district court further observed, and we agree, that a reasonable officer could have believed that Mrs. Starrett's actions went beyond the passive refusal to consent to a search that was at issue in *Mickelson*, where the defendant refused to allow an officer without a warrant to enter a locked business during non-business hours. In contrast, Mrs. Starrett shut the front door of her trailer, which blocked Sergeant Romero's path and line of sight to Mr. Starrett. As the district court discussed, the lawfulness of arresting a person for interference with a police officer when the person actively resists an allegedly unlawful, warrantless search or entry was not clearly established at the time the officers arrested Mrs. Starrett because no previous case was sufficiently akin to the facts Sergeant Romero and Officer Ramsey encountered here.

The court examined case law from other jurisdictions, which tended to show the lack of a clearly established right to use force—even the minimal force involved in shutting a door—to resist an illegal search. *Compare Hill v. Scott*, 349 F.3d 1068, 1074 (8th Cir. 2003) ("In Minnesota . . . there is no right to resist an unlawful search or arrest"); *United States v. Ferrone*, 438 F.2d 381, 390 (3d Cir. 1971) ("[A] person does not have a right to forcibly resist the execution of a search warrant by a peace officer or government agent, even though that warrant may subsequently be held to be invalid."); *Waldron v. Roark*, 874 N.W.2d 850, 865 (Neb. 2016) ("[A]n illegal search does not justify the use of force in resisting an officer"); *and Dolson v. United States*, 948 A.2d 1193, 1202–03 (D.C. 2008) (concluding that actions that "reinforce[] an existing barrier, *e.g.,* locking a closed door, and even [the] creation of

a new barrier, *e.g.,* closing then locking a door" or holding a gate shut against an officer's attempt to enter, constitute interference with a police officer because they surpass "passive resistance or avoidance" (internal quotation marks omitted)), *with Esmont v. City of New York*, 371 F. Supp. 2d 202, 210 (E.D.N.Y. 2005) (explaining that resisting an illegal search does not violate a New York statute prohibiting obstruction of governmental administration). "The rationale for this rule is firmly rooted in public policy: If resistance to an arrest or a search made under the color of law is allowed, violence is not only invited but can be expected," and "[s]elf-help exposes both the officer and the suspect to graver consequences than an unlawful arrest." *Dolson*, 948 A.2d at 1202 (internal quotation marks omitted).

The district court also noted that in *Roberts v. State*, 711 P.2d 1131, 1135 n.3 (Wyo. 1985), the Wyoming Supreme Court had acknowledged that "[t]he privilege to resist an unlawful search has not been established in this state despite some language to that effect in [a prior opinion]."[4] And the district court pointed out two other considerations weighing against finding any clearly established law in this area. First, most of the cases the court had discussed involved a warrant, and some reserved the question whether there is a right to resist an unlawful warrantless search, *see Ferrone*, 438 F.2d at 390 n.19 (reserving question whether "under some

_____

[4] To the extent *Mickelson* could be read as establishing such a privilege, there is no indication that the Wyoming Supreme Court has extended it beyond the facts of that case. And because *Mickelson* is factually distinct from this case, it cannot provide the clearly established right Mrs. Starrett seeks; indeed, she makes no argument that it does.

- 9 -

circumstances" there is "a right to resist an unlawful warrantless search"); *State v. Pembaur*, 459 N.E.2d 217, 219 (Ohio 1984) (concluding that "[a] warrantless entry, as in this case, may quite possibly result in the exclusion of pertinent incriminating evidence observed in such entry, and the showing of unreasonable conduct by a law enforcement officer may well provide a privilege to resist the entry by the occupant"). Second, the district court noted an apparent lack of agreement whether state or federal law determines whether there is a right to resist an unlawful search, let alone the contours of any such right. *Compare Hill*, 349 F.3d at 1074 (Eighth Circuit examining whether there is privilege to resist an unlawful search as a matter of Minnesota law), *with Ferrone*, 438 F.2d at 390 (Third Circuit analyzing the issue solely as a matter of federal constitutional law).

We agree with the district court's well-reasoned analysis on this issue and its conclusion that, given the lack of clearly established law "as to whether the Fourth Amendment conveys a valid privilege to actively resist an unlawful, warrantless search[,] . . . a reasonable officer could have believed that [Mrs. Starrett] exceeded the passive resistance to an unlawful search [she] was entitled to under *Mickelson* and transgressed into a non-privileged act of resistance that could support arrest under section 6-5-204(a)." Aplt. App., Vol. 1 at 252–53.

On appeal, Mrs. Starrett has offered no case to meet her burden of showing that the law was clearly established that she was entitled to resist Sergeant Romero's attempt to follow Mr. Starrett into the house to retrieve his shoes by shutting the door and telling him he could not enter because he did not have a warrant. Nor has she

- 10 -

pointed us to any case that "*squarely governs* the case here," *Mullenix*, 136 S. Ct. at 309 (brackets and internal quotation marks omitted). Instead, she relies on three older Supreme Court cases stating there is a common-law right to resist an unlawful arrest. *See Miller v. United States*, 357 U.S. 301, 306 (1958); *United States v. Di Re*, 332 U.S. 581, 594 (1948); *John Bad Elk v. United States*, 177 U.S. 529, 535 (1900). But that right "has given way in many jurisdictions to the modern view that the use of force is not justifiable to resist an arrest which the actor knows is being made by a peace officer, although the arrest is unlawful." 2 Wayne R. LaFave et al., Criminal Procedure § 3.1(o) (4th ed.) (footnote, ellipsis, and internal quotation marks omitted). In any event, none of the cases is sufficiently "particularized to the facts of [this] case," *White*, 137 S. Ct. at 552 (internal quotation marks omitted).

We conclude that, given the "unique set of facts and circumstances" this case presents, *id.* (internal quotation marks omitted), Sergeant Romero and Officer Ramsey had arguable probable cause to arrest Mrs. Starrett for interference under Wyo. Stat. Ann. § 6-5-204(a). The district court therefore properly determined that the officers are entitled to qualified immunity on the unlawful arrest claim.[5]

---

[5] Mrs. Starrett claims that the officers could not rely on § 6-5-204(a) because they had not arrested her for violating the interference *statute* but for violating a municipal interference *ordinance*. An officer's subjective belief, however, that probable cause existed to arrest a suspect for one crime "does not preclude the Government from justifying the suspect's arrest based on any crime an officer could objectively and reasonably have believed the suspect committed." *Culver v. Armstrong*, 832 F.3d 1213, 1218 (10th Cir. 2016).

B. *Excessive force*

In granting qualified immunity to Officer Ramsey on the excessive-force

claim, the district court considered Officer Ramsey's conduct taking down Mrs.

Starrett as she had alleged: intentional[6] and done without any warning that she

should step aside or that she would be arrested.[7] The court properly reviewed Mrs.

Starrett's excessive-force claim under the Fourth Amendment for objective

reasonableness, as required by *Graham v. Connor*, 490 U.S. 386, 397 (1989). "[T]he

question is whether the officers' actions are objectively reasonable in light of the

facts and circumstances confronting them, without regard to their underlying intent or

motivation." *Id.* (internal quotation marks omitted). The inquiry "requires careful

attention to the facts and circumstances of each particular case, including the severity

of the crime at issue, whether the suspect poses an immediate threat to the safety of

the officers or others, and whether he is actively resisting arrest or attempting to

---

[6] Officer Ramsey claimed he stumbled and accidentally pulled Mrs. Starrett down.

[7] On appeal, Mrs. Starrett appears to claim that, in addition to the takedown by Officer Ramsey, Sergeant Romero used excessive force by trying to move her out of the doorway. But she made no such claim in the district court. We therefore will not consider it. *See Daniels v. United Parcel Serv., Inc.*, 701 F.3d 620, 640 (10th Cir. 2012) (explaining that an appellant is barred from raising a claim "for the first time on appeal"). She did claim in district court that both officers used excessive force by initially approaching the trailer with their guns drawn and sitting on her after the takedown longer than needed to handcuff her. *See, e.g.*, Aplt. App., Vol. 1 at 12, 168, 171. But she does not take issue with the district court's ruling on those aspects of her excessive-force claim, so we will not consider them. *See State Farm Fire & Cas. Co. v. Mhoon*, 31 F.3d 979, 984 n.7 (10th Cir. 1994) (explaining that issue not raised in opening brief is waived).

evade arrest by flight." *Id.* at 396. It must also "allow[] for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation." *Id.* at 396–97.

The district court said that the first *Graham* factor weighed slightly in favor of finding the force used was not excessive because the crime at issue, interference, was only a misdemeanor. *See Morris v. Noe*, 672 F.3d 1185, 1195 (10th Cir. 2012) (concluding that first *Graham* factor weighed only slightly in favor of finding a takedown an acceptable use of force where crime was misdemeanor).

The district court found the second factor more compelling as justifying the officer's conduct. It concluded Officer Ramsey could have reasonably believed that Mrs. Starrett's act of closing the front door posed an immediate safety threat given that she appeared intoxicated and was uncooperative, Officer Ramsey had no way of knowing if Mr. Starrett was also intoxicated or otherwise agitated, and Officer Ramsey could have reasonably suspected there was a firearm present given his knowledge of the prior domestic disturbance call at the Starretts' trailer. *See Novitsky v. City of Aurora*, 491 F.3d 1244, 1256–57 (10th Cir. 2007) (reasoning that risks presented by potentially intoxicated persons can justify heightened use of force); *Fletcher v. Town of Clinton*, 196 F.3d 41, 50 (1st Cir. 1999) (explaining that deference is owed to an officer's judgment in domestic disputes because "violence may be lurking and explode with little warning").

The district court determined that the third *Graham* factor weighed in favor of finding excessive force because Mrs. Starrett was taken down immediately after she closed the door, indicating she had not resisted an arrest or tried to flee.

Despite its analysis of the *Graham* factors, the court did "not definitively rule on them." Aplt. App., Vol. 1 at 259. The court instead decided that the law was not clearly established. Mrs. Starrett identified no case involving similar circumstances, and the district court considered *Morris* but concluded that it was significantly different than the instant case. The court said at least two of the "*Graham* factors arguably suggest[ed] that a takedown was an appropriate use of force" and determined that Mrs. Starrett's case was not egregious enough to decide on *Graham*'s "more generalized precedent." *Id.* at 260.

As in the district court, Mrs. Starrett has on appeal failed to "identify a case where an officer acting under similar circumstances as [Officer Ramsey] was held to have violated the Fourth Amendment." *White*, 137 S. Ct. at 552. Instead, she outlines *Graham*'s general excessive-force principles. But the *Graham* factors "do not by themselves create clearly established law," *id.*, and, given the unique circumstances here, "[t]his is not a case where it is obvious that there was a violation of clearly established law under . . . *Graham*." *Id.* We therefore conclude that Officer Ramsey was entitled to qualified immunity on the excessive-force claim.

## IV.  **CONCLUSION**

The judgment of the district court is affirmed.

ENTERED FOR THE COURT,

Scott M. Matheson, Jr.
Circuit Judge